JUNE TERM,
1853.

Walker et al
vs.
Rogan.

</div>

---

MARTIN O. WALKER *et al.*, *Appellant*,

ads.

PATRICK ROGAN, *Appellee.*

Wisconsin
1 597
93 199

1 597
d100 357

A majority of the justices of this court constitutes a quorum for the transaction of business.

When two of the justices had been of counsel on opposite sides of a cause in a former stage of its litigation, and the counsel for the respective parties entered into a stipulation to argue the cause before the other justice who had not been of counsel, and that he alone should make up the decision which should be pronounced and entered as the decree of the court; and the cause was so heard, and the decision and decree pronounced in open court, in presence of the counsel for parties and without objection: Held that the stipulation so made and the decree so pronounced were binding.

The sitting upon the bench of the two justices who had been of counsel when such decree was pronounced, in pursuance of the stipulation, *pro forma*, to make a quorum merely, is neither improper, irregular, nor unlawful.

An appeal in equity from the Circuit Court, gives the Supreme Court juisdiction, of the subject matter and of the parties, and the competency of the members of the Supreme Court to sit in the case, cannot be inquired into at the time of taking the appeal; nor can the Circuit Court resume jurisdiction after appeal, on the ground that one or more of the justices of this court had been of counsel.

Though consent of parties does not give jurisdiction of a subject matter of a cause, yet consent may and does give jurisdiction of the parties.

A judgment of a court of record having jurisdiction of the subject and the parties, however irregular, is not void.

A distinction is be taken between the distribution of powers among the several departments in the organization of the government, and the mere delegation of powers by government to subordinate tribunals, or persons.

Where matters are submitted to private persons for a private purpose, all must concur in the decision.

Where powers are delegated to a definite number, the charter or act of delegation being silent upon the subject of a quorum, a majority may act, and such majority may bind the whole.

Where power is delegated to an indefinite number, the charter or act of delegation being silent as to the quorum, any number, all having an opportunity to participate, may act and bind the whole.

Written authority to appear, as counsel, solicitor or attorney, is not required of the members of our bar.

[This motion and the following petition of James Rogan, one of the defendants, are so nearly allied to the principal case, that it is deemed advisable to publish them together in this volume, although they more appropriately belong, in point of time, with the cases of the December term, assigned for the next volume.]

At the last term, the case of Patrick Rogan *vs.* Martin O. Walker and others, was regularly pending in this court on appeal from the Circuit Court of Iowa county, and noticed for hearing. The Chief Justice and Mr. Justice Crawford had been concerned as counsel in some former stage of the litigation between the parties, the one for the defendant Walker, and the other for the complainant. Mr. Parker, of the firm of Smith, Parker & Jordan, solicitors of record for the defendant, appeared at the June term, and committed the conduct of the cause, on behalf of the defendant, to Mr. Arnold, also in attendance. Owing to the relation of two of the members of the court to the case, it was supposed that the argument could not take place at that term, and the cause was entered continued. Subsequently, Mr. Yates also appeared in the cause for the defendant, and by consent of counsel the continuance was vacated, and the following stipulation entered into and filed :

" Judges Whiton and Crawford, having been re-

June Term, 1853.

Walker et al.
ads.
Rogan.

tained and officiated as counsel for one of the parties, before their election as judges, leaving His Honor Judge Smith alone competent to hear and determine this cause, it is therefore hereby stipulated and agreed by and between the counsel for the respective parties, that this cause be tried before Judge Smith, at Chambers, on Wednesday, the 17th inst., or as soon thereafter as convenient to said judge and the counsel employed, and that the decision made by him, shall be entered by the clerk of said court, as the decision and judgment of the Supreme Court, as of the July (June) term thereof, 1853; and it is hereby stipulated and desired, that for the purpose aforesaid, the papers on file in the Supreme Court, be taken from the files by said judge, and brought to Milwaukee, for the use of the counsel, &c., and to be returned to the files by the judge.

" August 8, 1853.
<div align="center">

"ARNOLD & YATES,
" <i>Of Counsel for Appellants.</i>
"FINCH & LYNDE.
" <i>Of Counsel for Appellee.</i>"

</div>

On the 12th of August the court adjourned, to meet again the 20th of September. The argument was held in pursuance of the stipulation, before Justice Smith, at Milwaukee, on the 19th, 20th and 21st of August, and during the term in September, he pronounced his opinion, and a final decree was entered; Mr. Yates, the counsel for the defendant being present when the opinion was pronounced, and no objection being made.

At the December term, the following motion was filed : after the title of the cause :

"And now comes Martin O. Walker, one of the

JUNE TERM,
1853.

Walker et al
ads.
Rogan.

above named defendants, by Abbott & Clark, his special attornies for that purpose, and moves the court to set aside, and declare null and void, the stipulation on file among the papers of this cause, of date Aug. 8, 1853, by which it was undertaken to be agreed that this cause should be submitted to the Hon. A. D. Smith, one of the associate justices of this court at chambers ; and also, to set aside all the proceedings which have been had in this cause since the last term of this court ; and to set aside and vacate the decree made in this cause by the said associate justice, Hon. A. D. Smith, on the 29th day of September, A. D. 1853, for reasons that said decree was made by but one of the judges of this court, and is not a decree of this court, a quorum of said court not having been present at the hearing, or at the time when said decree was rendered, and said decree not having been made at any term of this court ; and for the reason that the counsel who undertook to make said stipulation on behalf of the said defendant, did not have any authority to make or enter into any stipulation which could be binding on said appellant ; but on the contrary, said counsel were expressly prohibited from entering into any such stipulation, or doing any act which might prevent this cause from being heard at a regular term, and by a full bench of this court ; and for the reasons contained in the affidavits hereto attached."

Accompanying the motion is the affidavit of the defendant, in which he states, that he employed a lawyer from Chicago, to argue and take full charge of said cause, in the Supreme Court, and attended with his said attorney at the last June term of this court and remained until said cause was continued ; that for the

June Term, 1853.

Walker et al.
ads.
Rogan.

purpose of assisting said attorney, and not for the purpose of controlling or managing said cause, he employed Peter Yates, an attorney of this court; that before leaving Madison during said term, it was agreed between him and his attorney from Chicago, that Yates having been specially and only employed to make an argument at the last June term, it was better to have and demand a full " bench to hear said appeal; that he and his attorney then left Madison in the full confidence that nothing could be done until December term; that subsequently, and a short time before the cause was argued before Hon. A. D. Smith, he was for the first time informed, by a disinterested party, of the stipulation, to have the cause heard before Hon. A. D. Smith alone; that immediately, and as he believes, before the argument, he telegraphed to Yates that he dissented from the stipulation and would not be bound by it; and addressed letters to C. D. Davis, of Milwaukee, requesting him to see Yates and Arnold and inform them, that he not only disapproved and dissented from the stipulation, but insisted upon a hearing before a full bench; that he is informed and believes that the stipulation was made by Yates alone, in the name of Yates and Arnold, without consulting with said Walker, or the attorney of record, or the attorney from Chicago, and was wholly without authority or knowledge of the affiant; and, that said Arnold had never been employed by him personally, and he had no knowledge that he had ever been employed in the case, other than this, that A. H. Smith, one of the counsel formerly employed by him, informed him, that he had requested Mr. Arnold to make an argument for him at the June term.

Also, the affidavit of Henry Frink, of Chicago, set-

ting forth that he is an attorney and counsellor at law; that some time during the term of the Supreme Court of Wisconsin, held in July last, he was employed by Mr. Walker, to go to Madison to argue said cause, and did go ; but upon arriving at Madison with Walker, they were informed by the clerk that the cause had been continued ; that he ordered copies of the record and papers, and was engaged in preparing the cause for argument, when he was informed that the same had, by some arrangement between counsel in Wisconsin, been decided by one of the judges of the Supreme Court; that having learned the cause had been continued, he expected no proceedings would be taken therein until the December term. And that he was retained by Walker to control the cause, and procure such counsel in Wisconsin as he should desire to assist him in the argument ; and that before leaving Madison, it was deemed important by him and Walker, that the cause should be heard by a full bench.

There was also read on the argument, though not filed nor served with the motion, the affidavit of Peter Yates, Esq., who states his employment by Mr. Walker, to argue the cause ; that some days, perhaps weeks, after the commencement of the June term (21st June,) he met Mr. W. in the cars at Waukesha, and conversed with him about the cause, and was told by W. that the chief justice had informed him that the cause had been continued ; that nothing was then said about stipulation, or any arrangement for a hearing before one judge. That he had been informed of Mr. Arnold's substitution for Smith, Parker & Jordan, and had no information of Mr. Frink's employment, or that of any other lawyer

in Chicago; that he made the stipulation in good faith, with the full intent and belief that it would bind the parties, and with the understanding that Mr. Arnold approved of and coincided with the act. Other matters are detailed at length, but not material to the questions involved, but which would occupy too much space to be given in detail.

*James S. Brown*, for the motion, made the following points:

The defendant contends, that by the Constitution of the State, and the organic act of this court, the Supreme Court consists of three judges, and that a decree, by a less number, is not the decree of the Supreme Court, and is therefore void. *R. S.*, *p.* 29, § 21, 3 *Comst.*, 547; *Sess. L.* 1852, 601. Whatever may be the effect of the Constitution alone, and of the provision for an act to organize a separate Supreme Court, conferring power upon the legislature to direct as to what may be a quorum, this power, once exercised, is, by the terms of the Constitution, exhausted, and a less number than three can be made a quorum only by a change of the Constitution. However that may be, as the law now stands, three are necessary. 1 *Bos. & Pull.* 236; 6 *J. R.* 40; 7 *Cow.*, 526.

2. Treating the stipulation as the act of the parties, consent cannot confer jurisdiction, or erect one judge into a Supreme Court. 3 *Comst.*, 547–552; 8 *J. R.*, 409; 13 *J. R.*, 218; 21 *Wend.*, 63; 21 *Pick.*, 100–106.

3. If two judges, by reason of having been attorneys in the case, were incompetent to sit, then, although on the bench when the decree was pronounced, they were, by the law, removed from their seats,

when any matter affecting the merits of the case, came before the court for adjudication ; consent of parties could not remove the disability. 3 *Comst.*, 547.

The statutes allow objections to a circuit judge, to be removed by stipulation, but not objections to a supreme judge, and it even goes so far as to disqualify a judge from being an attorney, after he ceases to be a judge, in a case upon which he has passed as judge.

But the stipulation itself was not binding upon the parties. Mr. Yates was employed, as appears by the affidavits, for the only purpose, to wit : to assist in the argument. He was not attorney of record, and had been entrusted by the appellant with no *apparent* authority in the case. The stipulation therefore was not within the purview of his employment, and was void. It was not such a stipulation as could have been made, by the attorney of record himself. And at all events, parties enter into stipulations with attorneys who are not of record, at their own peril.

This is not a case where the same party who made the stipulation waited until the decision was made, and then objected. The appellant objected before he heard of the decision, and as soon as he heard of the stipulation.

Nor is the stipulation made any better by the name of Arnold. He did not himself sign, and never had any appointment as attorney from Walker himself, but only from Mr. Smith, who was the attorney of record. But the character of attorney is a personal trust, and cannot be transferred without express authority for that purpose. 18 *Vermt.* 485.

A motion to set aside the proceedings (or rather to correct the record) is proper, inasmuch as the decree is void, and not voidable.

Considered as an award, the decree is void, for the reasons already mentioned, and because it does not follow the terms of submission, and because the Supreme Court had no authority to enter judgment on awards. 29 *Maine*, 70.

In this case it is immaterial whether two or three judges constitute a quorum, as only one judge was competent to act.

But all of the judges can act upon this motion, as it is in effect only to correct the record and remove an interpolation. The record is always under the control of the court.

*Wm. P. Lynde*, contra, insisted that the object sought by the defendant could not be reached by this motion. Here is a decree of the court, entered of record in the usual manner. A bill of review is the only remedy. *Danl. Ch. R.* 1300; *Bradish vs. Gee, Amb.* 229; *Cases in Ch.* 85; 1 *Hop.* 102; 1 *Woodbury & Minoth*, 1; 3 *Ves.* 488; 2 *Atk.* 533.

*Yates*, in reply, cited 3 *Barb. Ch. R.* 148; 2 *Barb.* 59.

*By the Court*, SMITH, J. In order to arrive at a proper determination of this motion, it is necessary to recur to, and accurately understand its history, and the facts on which it is based.

The cause was appealed to this court from the final decree of the Circuit Court of Iowa county. At the last term, it was pending here, noticed for hearing, and duly placed upon the calendar. Messrs. Smith, Parker & Jordan were the first solicitors of record for the defendant Walker, the only one of the defend-

ants who had appeared. Mr. Parker, soon after the commencement of the term, appeared and informed the court, that in several causes upon the calendar, naming this among the number, in which that firm were solicitors of record, or marked as counsel, they would be unable to attend; but that Mr. Arnold, then in attendance, was employed to conduct them, and particularly referred to the one under consideration. Owing to the engagement of Mr. Arnold in the impeachment trial, the case was several times passed in its order of calling the calendar, and at length ordered continued. Afterwards, during the same term, Mr. Yates, an attorney, solicitor and counsellor of this court, appeared in the cause, and assumed its conduct and control on behalf of the defendant Walker. Near the close of the term, by agreement of the respective counsel, the continuance theretofore entered was vacated.

The Chief Justice and Mr. Justice Crawford had been concerned in the subject matter of the cause, in some former stage of the litigation between the parties in relation thereto, the one as counsel for the complainant, the other for the defendant, and they therefore declined to sit and participate in its adjudication. The obvious consequence was, that the cause must remain undetermined until the constituent members of the court should be changed, or until the legislature should provide for the contingency, or unless the parties should, by stipulation, obviate the difficulty.

Under these circumstances, the following stipulation was entered into by the counsel for the respective parties:

" Judges Whiton and Crawford, having been retained, and officiated as counsel for one of the parties,

before their election as judges, leaving his honor Judge Smith, alone, competent to hear and determine this cause, it is therefore hereby stipulated and agreed by and between the counsel for the respective parties, that the cause be heard before Judge Smith at chambers, on Wednesday, the 17th inst., or as soon thereafter as may be convenient to said judge, and the counsel employed, and that the decision made by him shall be entered by the clerk of said court, as the decision and judgment of the Supreme Court, as of the July term thereof, 1853. And it is hereby further stipulated and desired, that for the purpose aforesaid, the papers on file in the Supreme Court be taken from the file by said judge and brought to Milwaukee for the use of the counsel, &c., and to be returned to the file by the said judge.

"August 8, 1853.

<div align="center">

"ARNOLD & YATES,

"*Of Counsel for Appellants.*

"FINCH & LYNDE,

"*Of Counsel for Appellee.*"

</div>

On the 12th day of August, the court adjourned to meet again on the 20th day of September, to complete the business of the term.

During this recess, the cause came on for argument on the 19th day of August, before Justice Smith, at Milwaukee, in pursuance of the stipulation. Mr. Lynde appearing for the complainant, and Messrs. Arnold and Yates for the defendant, Walker, though Mr. Arnold did not actively participate in the argument. But he perfectly coincided with the conduct of the case. The argument occupied some three days, when the cause was finally submitted for decision and decree.

On the 20th day of September the court again met, and on the 23d day of September the opinion was delivered in open court, Mr. Yates, counsel for the defendant being present, and on the 29th, in open court and with a full bench, the decree was pronounced. During all this time, from the 8th of August, the date of the stipulation, until the 16th day of December, the 4th day of the succeeding term, no word of objection is uttered, no retraction of power is intimated, nor any violation of faith is manifested.

Now, however, a motion is made to set aside and declare null and void the stipulation entered into between Messrs. Arnold and Yates, and Mr. Lynde, as counsel for the respective parties, on the ground that the counsel who made the stipulation on the part of the defendant, were not authorized so to do ; and for the reason that the hearing was before only one of the justices, and the decision made by him alone, and for the further reason, that the Chief Justice and Mr. Justice Crawford, having been of counsel, sat upon the bench when the opinion and decree were pronounced.

Some of the question raised in the argument of this motion, and others suggested by its antecedents, are of great importance.

The counsel for the defendant contends, that by the Constitution of the State and the organic act of the court, this court must consist of one Chief Justice and two Associate Justices ; these three, no more, no less ; and that, whatever power the legislature may have had to declare what should constitute a quorum, that power was exhausted with the passage of the act of organization ; and that for every act of the court, it is absolutely essential that all three of its members be present and participate.

For the purposes of this motion, it may not be ne-JUNE TERM, 1853.

Walker et al.
ads.
Rogan. cessary to decide this question. This case was regu- larly brought here by appeal from the Circuit Court of Iowa county. It was regularly noticed for hearing at this term, and this court, as the Supreme Court of the State, had jurisdiction of the subject matter, and of the parties. Whatever impediments may have been in the way of the action of the individual members of the bench, the Supreme Court had jurisdiction. By the appeal the cause was removed from the jurisdic- tion of the Circuit Court. The competency of the members of this court could not be inquired into, at the time of taking the appeal. The Circuit Court, after appeal could not resume jurisdiction, on the ground that certain members of this court had been of counsel, and were, therefore, disqualified to sit in the cause. Therefore, to deny jurisdiction in this court for that cause, would be to remove the case from the cognizance of any judicial tribunal, and throw it out of court altogether. It is needless to say, that the judicial department of this State has not become sub- jected to the enactment of so 'serious a farce.' It is obvious, that the Supreme Court had jurisdiction of the subject matter and the parties of the cause, from the instant at which the Circuit Court lost it by ap- peal. Hence, also, it is apparent, that, having juris- diction of the subject matter and the parties, no decree or order pronounced by the court would be void. Errors might be committed, which could be rectified on motion, or by bill of review, but its judgments, orders and decrees would be valid.

But is it true, that the constitution and the law requires, that in every act of this court, all three of its members must necessarily be present and partici-

JUNE TERM,
1853.

Walker et al.
ads.
Rogan.

pate ? Is it true, that if any one of the justices, during the term, is sick, or from unavoidable accident, is unable to appear upon the bench, for one or more days, the functions of the court are entirely suspended, and this arm of the government paralyzed ? Constitutions and laws are made for the practical benefit of the people. The powers of the government are divided and distributed for the convenience and safety of the people. Both constitutions and laws are presumed to be enacted according to the dictates of a practical common sense. By the application of a like common sense are they to be construed and applied to the objects and ends of their enactment. That criticism which is never applied but when the objects of a law are to be defeated, is seldom requisite in its judicial construction. That hyper-critical acumen, which is called into exercise only, when the ends of justice are to be frustrated, is an unsafe guide in the administration of the law.

The object of the Constitution in directing the elements of a separate Supreme Court, which the legislature were authorized to organize, was to secure an efficient bench, composed of a sufficient number to meet the wants of the State, to furnish a plurality of minds for consultation, and to preserve its functions against the ordinary contingencies of human life and health. There is but one executive ; but to preserve the efficiency of that department against the contingencies of life incident to a single individual, a Lieutenat Governor is provided. Such provision was unnecessary in this department, for the simple reason that here is provided a multiple body, supposed to be secure, as a whole, against the incidents to which its parts might be liable. To hold, therefore, that

the temporary absence, from sickness or any other cause, of one of the members of this court necessarily suspends, and for the time, annihilates the judicial power of the State, (so far as that power rests in this court,) would be to impugn the wisdom and fidelity of all those to whom the organization of the government was intrusted. Nay, further, if this doctrine be true then, in case of the sickness or absence of a member of the bench, there can be no Supreme Court, no adjournment can be had, no cause continued, but causes and parties must retire from the last tribunal to which they have made their weary and expensive march, and be thrown back to the starting point of litigation ; be turned out of the court of last resort, all in a mass, unheard, and justice undetermined, slink away as blind as she approached. Surely a construction, involving such disastrous consequences and results, is not to be sought after for the mere purpose of indulging the suggestions of a critical fancy, and ought to be avoided, unless the stern mandate of practical, conscientious and impartial reason requires its adoption. It never could have been the design of the framers of the Constitution, or of the legislature, to have the administration of the government liable to such casualties.

There is to be observed a wide difference between the fundamental law, by which a government is organized and its powers distributed, and those laws by which the government delegates subordinate powers and imposes duties upon inferior bodies or tribunals. While the one is regarded as the creation of the several indispensable departments through which the sovereign power of the State is to be exercised, the other is the mere delegation of authority, limited and

JUNE TERM, 1853.

Walker et al.
ads.
Rogan.

special, by which the detail of administration is to be conducted. The failure or imperfection of the latter may, at all times, be remedied by the existing government, while the failure of the former might operate the suspension or abrogation of the sovereignty, and become destructive of the government itself. The rule, therefore here contended for, (and which seems to have found favor with Justices Bronson and Jewett, in their dissenting opinion in the case of *Oakley vs. Aspinwall*, 3 *Comst.*, 564 ; " that whenever a power is delegated to several persons, without any provision that it may be exercised by a smaller number, they all must join;" does not apply to this case. The learned and venerable jurist, who delivered that dissenting opinion, seems to have lost sight of the distinction between the distribution of powers in the organization of a State or government, and the mere delegation of authority by the State to inferior tribunals or bodies. When the State, the primary repository of the sovereign power, delegates authority to a certain number of persons, it may well require that all of the persons thus entrusted shall be required to participate in the execution of the trust. In the latter case, authority is entrusted to the *persons*, for a special and limited purpose. In the organization of the government, its powers are not distributed to or among persons or individuals of a certain number, but to and among certain departments. To each department its appropriate powers are assigned, not as new powers created for the occasion, but as part and parcel of those already existing as inherent in, and pertaining to the very nature, and inseparable from the complete idea of government. In no sense can it be said to be a delegation of authority to individuals, or a

certain number of persons. The powers and functions attach to the departments, to be exercised, from time to time, by the person or persons who may succeed to the offices.

It is indeed true, that sometimes, perhaps usually, when the department consists of a number of individuals, it is provided what number shall constitute a quorum. But is this for the purpose of *enabling* a number less than the whole to act? Or, is it not rather to *prohibit* a number less than a majority, or the prescribed number, from assuming the functions of the whole?

The Constitution provides, that "for the term of five years, &c., the judges of the Circuit Courts shall be judges of the Supreme Court, four of whom shall constitute a quorum, &c." It is not difficult to perceive the reason of this provision. The number of circuit judges provided for by the Constitution was five. Doubtless the provision mentioned was inserted in order that there might always be upon the supreme bench a majority of the judges who had not participated in the decision of the cause in the court below. As every cause coming to the Supreme Court (as then organized) must come from the judgment of one of the five, it was deemed advisable to provide for the presence of a majority of the whole, not thus situated. We are authorized in adopting this explanatory theory, by the contemporaneous history of the instrument. Will any one say, that without this provision for a quorum, in case of the accidental sickness, the death, resignation, or temporary absence of one of the circuit judges, the Supreme Court of the State would have been incapable of acting? Or rather, would not, in such case, a majority at once have entered up-

on and performed the functions of the court? But in providing for a *separate* Supreme Court, the necessity for this precaution (whether wise or unwise) did not exist, and hence a designation of the quorum was not deemed requisite.

It is believed, that in all cases where the quorum of a multiple body is provided for, the object has never been to declare that the power of the whole might be exercised by a part, or to *enable* a part to perform the functions of the whole, but rather to protect the whole, or a majority, against the encroachments of a minority, which accident might favor, and to secure an adequate number or representation in the acting body. A recurrence to the history of the British Parliament, as well as other constituent departments of government deriving their source or plan from the common law, will illustrate and justify this conclusion.

But it is not conceded that the principle contended for is the doctrine of the common law, even as it relates to powers delegated to inferior tribunals or bodies.

When an act of a public nature is to be done by a *definite* number of persons, (the charter or act of delegation being silent on the subject,) a majority of the number, all having an opportunity to act, constitutes a quorum, and no act can be done unless a majority be present; but when the act is to be done by an indefinite number, a majority of any number present may act. *Angell & Am. on Corp.* 281; *Rex vs. Barlow, Cowp.* 250; *Rex. vs. Monday, Cowp.* 428; 3 *T. R.* 199; *Cowp.* 53; 7 *Cow.* 405; *Rex vs. Parmon*, 3 *T. R.* 190; 7 *S. & R.* 517. This distinction is clearly established by the authorities of the common law, from its earliest history.

JUNE TERM,
1853.

Walker et al.
ads.
Rogan.

The opinion of the dissenting justices in the case of *Oakley vs. Aspinwall*, before cited, may derive strength from a consideration of the peculiar constituent elements of that court, and the mode of their appointment. It is true, that when a corporate body, or a body to which power or authority is delegated, is composed of several distinct, integral elements, as "The Mayor and Aldermen of A.," each of the integral elements must be represented. The Court of Appeals of New York is composed of two classes of judges; the one class consisting of four elected by the electors of the State at large, and the other class of four taken from judges of the Supreme Court. Regarding this as a provision by which it was intended that the Court of Appeals should be composed of two distinct, integral portions, the argument of the dissenting justices derives great force, but it is wholly inapplicable to the organization of our Supreme Court. But regarding this provision merely as a mode of designating the members who should compose the Court of Appeals, the argument is at variance with the doctrine of the common law, and its force is greatly lessened, if not wholly lost.

In the case of *The King vs. Beeston*, 3 *T. R.* 592, it was held, that the statute 9, Geo. I., chap. 7, § 4, which enables the church wardens and overseers with the consent of the major part of the parishioners, to contract for the providing for the poor, it was not necessary that *all* the church wardens should concur. The contract of a majority of them was held to bind the rest.

In Kyd on Corporations, the rule is thus laid down. "At common law, independently of any specific constitution, when the power of acting is entrusted to any

June Term, 1853.

Walker et al. ads. Rogan.

specific number, whether definite or indefinite, any number of the whole body, however minute, is sufficient to form a legal assembly, if all be properly summoned to attend. The same doctrine is asserted in Angel on Corporations, 282. Kyd in the same work before quoted, says, "The House of Commons consists of 558 members, of whom 40 form a house;" and "that a less number than 40 would do so, were it not for a standing order of the house prohibiting it." It was, probably in view of the history and law of the British Parliament, that in most, if not all of the constitutions of this country, provision is made for the presence of a majority of the members of similar bodies, in order to render valid their action.

The provision in the Constitution of the United States, requiring a majority of each branch of Congress, to form a quorum, was doubtless also suggested by the history, practice and law of the British Parliament, whereby a very small number of that body was wont to assume the functions of the whole, until the quorum was finally fixed by a standing order. (*Federalist*, 318.

True it is, that where matters are referred to several, for a private purpose, all must concur in their action. But this principle is deduced from the intent and expression of the contract of the parties delegating the authority, and has no application to bodies or departments created as instruments of government, and which constitute a part of its machinery.

In numerous instances where authority has been conferred upon a *certain* number of persons, "*or a major part of them*," this latter phrase has been laid out of view, and a majority held to be competent and requisite, according to the established principles of

the common law.  6 *T. R.*, 278 ; 5 *Dane's Abr.* 150 ;
and so likewise when the charter has been silent as to
the quorum, and certain powers delegated to a definite
number, a majority of that number has been held com-
petent to act.   Indeed, this principle is so consonant
with common sense, in view of the contingencies of
human life, that it would seem remarkable that it
should ever have been questioned.

In the case of the *Attorney General vs. Day*, 2
*Atk.* 212, Lord Chancellor Hardwick says, " It cannot
be disputed, that whenever a certain number are
incorporated, a major part of them may do any corpo-
rate act ; so, if all be summoned and *part* appear, a
major part of those that appear may do a corporate
act, though nothing be mentioned in the charter of the
major part.   This is the common construction of char-
ters."

When it is intended to make the presence of a num-
ber greater than a bare majority necessary to the per-
formance of a corporate act to bind a corporation con-
sisting of a definite number, provision for the desired
quorum must be made in the charter or act of delega-
tion ; otherwise a majority will constitute a quorum.
And unless the number be definitely fixed, a pos-
itive provision to constitute a majority of the whole,
a quorum is necessary ; otherwise, any number pres-
ent may act, and a majority of such number present
may bind.   Hence it is, as before remarked, on refer-
ing to the action and history of the House of Com-
mons, that care is taken in acts of incorporation, as
well as in the framing of fundamental laws, to secure,
by positive enactment, the presence of a majority to
constitute a quorum, where the majority may vary

from time to time, as is the case in regard to most of the legislative bodies of this country.

It is perhaps difficult to imagine a more accurate exemplar of the common law, than the English House of Commons. The British Constitution, as exemplified by the record of its custom, is silent in regard to the number necessary to constitute its quorum. Yet any number of this body claimed the right to act, at the proper time and in the proper place, (all having been duly summoned or elected, and having due notice of the time and place of meeting,) until at length it was found necessary to declare the number necessary to form a quorum, by a standing order of the House. This number was, by such order, fixed at forty.

By the British Constitution, the House of Lords is constituted a court for certain purposes, among which is the trial of peers of the realm, for certain offences. But twelve peers must be present, for a verdict by a less number of peers would not be good. 5 *Com. Dig.* 307; and, if more peers were present, the verdict must be by a major part, so that twelve, at least, agree to it. .5 *Com. Dig.* 308; and, therefore, in order to have a major part of those present, and yet twelve in number to agree upon a verdict, it was usual to have twenty-three peers present, to constitute that high court. Yet the constitution was silent upon the subject, and the matter rested wholly upon the authority of the common law; for the House of Lords as a judicial tribunal, is founded on *immemorial usage*, and is a part of the original constitution of England. *Com. Dig.* 306.

These examples are especially important, as they apply as well to the authority of the common law,

June Term, 1853.

Walker et al.
ads.
Rogan.

in regard to the primary departments of government, as in reference to the delegation of authority to subordinate bodies or tribunals. Nor is their force lessened, by the fact that the constitution of England is unwritten ; for it is based upon established principles, of binding authority upon all the departments of government, as well as are the principles of the unwritten common law, and indeed is a part of it.

It is apparent, we think, that the position assumed by the counsel for the defendant is not sustained by the common law, as it is applied, either to primary departments, to which the powers of government are distributed, or to subordinate bodies or tribunals, to which authority may be delegated. It is equally clear, that by the usage of the common law, a majority of the members of the bench are a quorum for the transaction of business. Whether or not, less than a majority could act in any contingency, is a question not now involved, and therefore unnecessary to be discussed.

But it is objected, that Messrs. Yates and Arnold had no authority to enter into this stipulation. The stipulation is signed "Yates & Arnold, of counsel for defendant." It was signed by Mr. Yates, but was indubitably ratified by Mr. Arnold, by his appearance at the hearing which was had in pursuance of the stipulation. The solicitors of record are Messrs. Smith, Parker & Jordan. Mr. Smith, of that firm, it was well known to the court and the parties, had for some time past retired from practice. Mr. Parker, as has been before remarked, appeared in the cause at the last term, and committed its conduct to Mr. Arnold, and the defendant himself informs us, in his affidavit in support of this motion, that A. H. Smith had in-

JUNE TERM, 1853.

Walker et al.
ads.
Rogan.

formed him of the employment of Mr. Arnold, and that he had employed Mr. Yates. It is true, he says he employed him as special counsel only, to assist in the argument. But from the defendant's statements it will be difficult for the court to find a counsellor or solicitor who has any other than a special relation to the case. Mr. Yates, it seems, was specially employed to "assist" in the argument; Messrs. Abbott & Clark are specially employed to file this motion; Mr. Brown is employed as special counsel to argue it. Whether Mr. Yates appears as special counsel on this motion, or by virtue of his original authority, does not appear. The only gentleman who seems to be entrusted by the defendant with the general conduct and control of the cause, is Mr. Frink, of Chicago, whose name nowhere appears upon the record, who is not an attorney, counsellor or solicitor of this court, a resident of a foreign State, and who could only be permitted to appear *ex gratia* for the occasion of its hearing- The record of the case, through its various stages of litigation, exhibits the following array of solicitors and counsellors : Messrs. Smith, Parker & Jordan, M. M. Cothren, Peter Yates, Abbott & Clark, J. E. Arnold, James S. Brown; to which may be added, (as the defendant asserts,) Mr. Frink, of Illinois, controlling counsel in expectancy, if circumstances shall permit. Who, of all this array, according to the statements of the defendant, can this court hold responsible for the management of this case? It is needless to say, that no court can ever, for a moment, permit itself to be thus trifled with ; allow parties to practice such faithlessness, to caricature judicial proceedings, and to contrive a precautionary subterfuge, at every step of progress, out of the gossamer tissues of trickery and infidelity.

It is unnecessary to review here, the affidavits of Mr. Walker and Mr. Yates, and to mark the discrepancies between them, and the departure of the former from the facts detailed by the latter. It is scarcely necessary to allude to the fact that the interview at Waukesha, was anterior to the argument at Milwaukee; that there is daily communication between Milwaukee and Chicago, the residence of the defendant; that before the hearing at Milwaukee, the defendant was perfectly aware of Mr. Yates' relation to and connection with the cause; that before the hearing, he had information of the stipulation, and it is useless to record many other circumstances here, which would be alike unpleasant to us and disreputable to the defence; because this court cannot shut its eyes to the fact, that instead of the good faith and candor, so grateful to the hearts of brethren, both of the bench and bar, and which are due alike from each to the other, we are compelled to meet and repel a subterfuge unworthy of either.

The fact is indisputable, that Mr. Yates was entrusted with the control of the cause, so far as related to the conduct of its trial or hearing. It is worse than folly to say, and *Mr. Yates* does not say, that he was employed *only to assist* in the argument, and that Mr. Frink, of Chicago, had " the professional control of the cause." Mr. Frink had no place of record; he was alien to our jurisdiction, and had never, in form of law or otherwise, sought recognition in this court. If it be true, that he attended at the June term with the defendant, to assume the management of the case, and that the defendant had conferred upon him full and exclusive authority to control it, is it not remarkable that he made no disclosure of his

JUNE TERM, 1853.

Walker et al.
ads.
Rogan.

authority to the court? That he never asked admission? That he never sought to have his name placed upon the record, nor intimated, in the slightest manner, either his presence or his functions? Mr. Yates attended upon the cause at, and during the term for which it was noticed for hearing. He had power to argue the case or to submit it, without any argument. He consented to a decree to be pronounced by the court, without any other argument than that to be made before one of the justices. That argument was had on the 19th, 20th and 21st of August; the opinion of the court, in the presence of Mr. Yates on the 23d day of September, and the final decree on the 29th, about 40 days after the hearing, and during all this time, an interval of only some 10 hours intervened between the counsel and his client. He says, indeed, that for some time he was absent from Chicago; but was Mr. Frink the "controling counsel" absent likewise? Or, if Mr. Yates was only employed to "assist" in the argument, could he have been ignorant of the name and residence and functions of his leader? We should be doing an act of injustice to the counsel, such as we would be unwilling to do to any member of our bar, should we put upon record the fact sought to be established by this motion.

We do not demand of the members of our bar, written authority to appear and conduct the causes of their clients. We trust that the time will never come, when we shall be compelled to do so. When a party appears and asks the interposition of this court to protect his rights against the malfeasance of his counsel, the claims of justice and the honor of the profession will be regarded, and adequately, if not equally, protected. If the attorney or counsellor be irresponsible

June Term,
1853.

Walker et al.
ads.
Rogan.

and incompetent to redress his wrong, then relief may be asked of the court. But no such pretence is set up here. No cause is made to appear, calling for, or justifying our interference between this party and his professional adviser ; and though we may regret the occasion, we feel no reluctance in performing our duty by protecting the honor of the latter, against the unworthy pretences of the former.

In view of the facts disclosed by the papers on which this motion is founded, we hold that Messrs. Yates and Arnold had authority to make the stipulation referred to, and that the defendant is bound by it. Every case must either be conducted by the parties in person, or by some regularly authorized agent of his choice, or by some solicitor, attorney or counsellor of this court, who is authorized to control the the same, and who must be held responsible for its conduct.

Nor is the proceeding had in this case without precedent. The judiciary act of the United States, and the several acts amendatory thereto, constitute one of the justices of the Supreme Court of the United States, together with the district judge of the proper district, a Circuit Court of the United States.

The case of *Daggett, in Equity vs. Emerson, et. al.,* 1 *Woodbury & Minott,* 1, is in point here. The case was pending in the Circuit Court of the First Circuit (Maine) at the May term, 1845. The pleadings and evidence being closed, and it being inconvenient to have the hearing at that term, it was mutually agreed by the parties to have it heard during vacation at Boston. The case was accordingly argued in pursuance of the stipulation at Boston, before one of the judges of that court. In the August following, still

in vacation, in the presence of the counsel assenting to the act, an opinion on the case was delivered by the judge to whom it had been submitted and before whom the hearing had been had; (*See Story's Rep.* 700) and in order that it might be entered on the record by the clerk, the draught of a decree was attached by the judge in conformity with the opinion, and handed to the reporter, to be transmitted to the clerk; but it was not in fact forwarded to the clerk until an adjourned term had intervened, and closed, and hence the decree was not entered at the regular or adjourned session. The next day after the opinion and draught of decree was announced, the judge who heard the cause, and drew up the opinion and sketch of decree, died; and at the October term following, the counsel for the party in whose favor the opinion was found, moved the court to enter and carry into effect the decree. This was objected to by the counsel for the opposite party, and thus the whole proceeding was presented to the court for adjudication. Mr Justice Woodbury, in delivering the opinion of the court says, interrogatively, (as though the statement of the proposition was its strongest support,) " could it be urged with effect or plausibility, that only one judge was present and participated in the opinion and decree, if that judge had not died before the decree was actually entered on the docket? We think not. Because the hearing before the judge, and opinion rendered or decree prepared, only by one judge of the court, when the other is absent or desirous not to take part in them is a very common practice and is legal." Yet the constituent members of the Circuit Court of the United States are as determinate and fixed, as are those of this court.

In the same case, Mr. Justice Woodbury further

says, "The opinion and decree therefore, in this case were not invalid because given by one judge alone, when the other wished to be excused from taking part in the hearing at Boston, and did take no part; and the parties, *through their counsel*, had the hearing voluntarily before one judge alone." "Next, it cannot impair the validity of the opinion and decree, that the hearing was had, and they were made in vacation; because such is often the practice for the convenience of the parties themselves, and when assented to by them, as in this case, and attended on by them, no court of law, much less of equity, could permit either of them on that account to impeach their validity. (*Gould vs. Oliver*, 2 *Scott*, *N. R.* 241.)"

The case here cited goes much farther than was attempted in this case. The opinion was pronounced in open court, with a full bench, in presence of the counsel for the defendant, and the entry made by the clerk, without objection.

But it is said here on the argument, that the bench was not full; that the Chief Justice and Justice Crawford, having been concerned in the subject matter of the litigation as counsel, heretofore, though corporeally present, were legally removed. It is difficult to appreciate the weight of this argument. It is to be hoped that no member of this court will ever attempt to participate in the adjudication of a cause in which he has been of counsel. But when a stipulation is made by the parties, through their counsel, that one of the members of the court shall hear and determine the cause, and his opinion and decree shall be pronounced as that of the court, and the other members, to carry out that stipulation, sit *pro forma*, to make a

41

quorum, or chance to be present at the delivery of such opinion, in which they have never participated in the slightest degree, and all this, too, at the solicitation of both parties, that justice might not be delayed or defeated, an objection to such sitting by those members of the court, for such cause, on the part of the party against whom the opinion may happen to have been formed, cannot be regarded with favor.

Again, it is said that such consent cannot give the court jurisdiction. It is indeed true, that consent, as a general thing, cannot give jurisdiction of the subject matter of the action. But consent can and does give jurisdiction of the parties to an action. It is unnecessary to inquire whether, if the question of jurisdiction were involved in this case, it would pertain to the subject matter or the parties. It cannot, however, escape the notice of any one, that the relation of an attorney or counsellor pertains to the client, and not to the subject of the action. If a judge were to be disqualified in every case, in relation to the subject matter of which, or the questions involved in which, he may have been, at some time during his professional career, consulted, but few cases would come legitimately before him. But here, we have endeavored to show, was no question of jurisdiction. The appeal from the Circuit Court of Iowa county brought the case within the jurisdiction of the Supreme Court, and that the jurisdiction of the latter attached, irrespective of the relation of the members of the court to the parties to the suit. And it would seem quite clear, that the effect of this stipulation is to waive all objection arising out of the relation of the members of the court to the parties, so far as their sitting was concerned, at the pronunciation, or entering of the decision. Suppose,

after the stipulation had been made, and after the

opinion and decree had been formed, but before the re-assembling of the court on the adjourned day in September, the Chief Justice and Justice Crawford had deceased, and their places had been filled by persons in no wise related to the cause or the parties, and that such opinion and decree had been pronounced in open court so constituted, in the presence and with the full acquiescence of the counsel for the respective parties: would these objections then have been raised? And because the Chief Justice and Justice Crawford yielded to the request of the parties, as well as to the stern demands of justice and necessity, (if not to the imperative mandate of the organic law of this court,) and barely sat, *pro forma*, during the delivery of the opinion, shall the losing party be permitted to question the propriety of their act? much less, to base such a motion as this upon such impropriety? Or, can the legality of such action be disputed in this form? Or, shall it be said that such an act of a court of competent jurisdiction, embracing the subject matter of the cause and its parties, is absolutely void?

It may well be asked, if the Chief Justice and Justice Crawford were legally removed from the bench when the opinion and decree were pronounced at the last term, how can they be legally present and participate in the hearing and decision of this motion? And yet the counsel not only makes no objection to their sitting upon this motion, but even seem to insist upon it. The parties are to be seriously affected by the determination of the motion. A final decree in the cause is sought to be opened up, and the whole matter thrown open for litigation anew. If these members of the court were incompe-

June Term,
1853.

Walker et al
ads.
Rogan.

tent to sit, even *pro forma*, *ex necessitate*, and with the full consent of the parties, at the last term, at the mere annunciation of this decision, it would seem that they were likewise disqualified to act in the disposition of this motion; and that if consent was nugatory in the former instance, it should be equally so in this.

But, in anticipation of this difficulty, we are told that this is only a proceeding to correct the records of this court; that by the record it appears that two of the justices of the court sat in this cause, who had been of counsel in a former stage of its litigation, and that the court has jurisdiction of its own records, in every cause, and at all times, and may correct or amend them at pleasure. And we are asked now so to correct this record, that it shall henceforth show, that whereas, at the last term, the two justices before named sat in this cause, let it now be recorded, that they did no such thing. A novel and ingenious device for the correction of judicial blunders, to be equalled only by the genius of the ostrich in defensive strategy.

But if all that is sought by the motion is merely to correct the record in the respect named, why is it sought by the party, defendant in this form? If the decree be absolutely void, as alleged, it can injure no one. If it be valid, it certainly should be shown to be erroneous or unjust before it be disturbed, and then in a manner conformable to the truth of the history of the case. The simple answer to these suggestions, however, is that the record in this case is the record of the parties themselves, made under direction of the court in accordance with the facts, with their full assent, and ought not to be changed or

altered, but as verity shall demand. *Volenti non fit injuria.*

JUNE TERM, 1853.

Walker et al ads. Rogan.

Whether or not the hearing of this cause at Milwaukee was a judicial act, the parties came into open court here at the adjourned session in September, with the cause submitted to the court, when and where a final decree was expected without further hearing, and was pronounced, which now stands and must remain of record.

We have attentively considered the case of *Oakley vs. Aspinwall,* relied upon by the counsel for the defendant. The point in judgment in that case, has at most but a remote bearing upon this motion, and we are unfortunate, perhaps, in being unable to adopt the reasoning which guided a majority of that learned body in sustaining and illustrating the conclusions by them announced, and the array of authorities furnished by the common law, alike preclude us from yielding to the arguments of the dissenting justices upon another branch of discussion in the same case.

Again it is said, that not only is the presence of all three of the members of this court necessary to form a court, but that the legislature has no power to interfere and provide for a quorum. That the constitution which provides, that when the legislature shall have provided for the organization of a separate Supreme Court, the same shall not be changed or discontinued, inhibits the legislature from making any further provision on the subject. In other words, that the legislature having exercised the power conferred by the constitution, their authority in the premises is exhausted. But this is too narrow a construction of the constitution. The legislature cannot abolish the court, change its organization, restrict or lessen its powers,

JUNE TERM,
1853

Walker et al
ads.
Rogan.

add to, or diminish the number of its members. But this inhibition does not prevent that body from conferring new powers upon the court, so that they do not upon the just distribution of the powers of the government among its several departments, or which are incompatible with its constitutional character and functions; they may prescribe the forms of proceedure, so that the remedial instrumentalities guaranteed by the constitution be not impaired; in short, the full and appropriate authority of the legislature, in its relation to the judicial department of the government, is preserved to that body, and it is only inhibited from destroying, changing, or impairing the just powers and functions of that co-ordinate department. There is nothing to prevent the legislature from removing disabilities which the common law may attach to one or all of the members, nothing to prevent their increasing facilities for the administration of justice, and, in their wisdom, multiplying the means by which the wrongs of the citizen may be redressed and his rights protected and secured.

The motion is denied with costs.