## THE STATE v. CREEDEN *et al.*

**Intoxicating Liquors**: IMPORTATION BY RAIL: SEIZURE OF IN CAR-
RIER'S WAREHOUSE: INTER-STATE COMMERCE. Small packages of
whiskey, so marked, were consigned from without the state
to the defendant C., within the state, on separate days, and they
were held by the railway company which carried them, in its
warehouse, from six to fifteen days, and the defendant, a notorious
saloon-keeper and violator of the liquor law, was accustomed to
take the liquor from the warehouse, one package at a time, as he
wanted it for unlawful sale in his saloon, paying the freight on
each package as it was taken away. Certain packages of such
liquor were seized upon search-warrant while in the carrier's ware-
house, and in a proceeding to condemn the same, *held*—

   (1) That as to the liquors thus held the railway company ceased
   to be a carrier, and became a warehouseman, and could not
   claim protection for the liquors under the inter-state com-
   merce clause of the constitution of the United States, as
   interpreted and applied in *Bowman v. Railway Co.*, 125 U. S.
   465.

   (2) That the company was, by its conduct in the case, aiding
   the defendant C. in the violation of the law, and could, there-
   fore, make no valid claim to the liquors on the ground that
   it had a lien thereon for the unpaid freight, which was but
   thirty-four cents on each package.

*Appeal from Polk District Court.*—HON. JOSIAH
GIVEN, Judge.

FILED, OCTOBER 18, 1889.

AN information was filed before a justice of the
peace, alleging that certain intoxicating liquor owned
by Con Creeden was kept in the freight depot of the
Chicago, Rock Island and Pacific Railroad Company,
intended for sale in violation of the laws of the state.
A search-warrant was issued upon this information, and
there were found thereon and seized six separate pack-
ages of whiskey. Upon the return of the warrant the
liquor was condemned. The Chicago, Rock Island and
Pacific Railway Company, which was made a party to
the action, appealed to the district court, where the

The State v. Creeden.

case was tried without a jury, and. judgment ordering condemnation and destruction of the liquor was entered. The railroad company appeals to this court.

*Thos. S. Wright* and *George E. McCaughan*, for appellant.

*J. A. Harvey* and *J. Y. Stone*, Attorney General, for the State.

BECK, J.—I. The facts established by the undoubted preponderance of the evidence are these: There were shipped from Rock Island, Illinois, by the Chicago, Rock Island and Pacific Railway Company, consigned to defendant Con Creeden, at Des Moines, six packages of whiskey, in separate shipments. The packages contained about five gallons each. Two were shipped on the seventh, and one each on the ninth, fourteenth, fifteenth and seventeenth days of November. Each package was received at the railroad freight depot at Des Moines in two days after the date of its shipment. The charge on each package was thirty-four cents. They were kept in the freighthouse or warehouse of the company until taken upon the search-warrant issued in this case. The defendant Con Creeden had received like packages of intoxicating liquor prior to this from the railroad company, which had been, in the same way, shipped to him from places out of the state. The liquors were seized on the twenty-third day of November. Two of the packages had been for fifteen days in the railroad freighthouse at Des Moines, one for thirteen days, one for nine days, one for eight days and one for six days. Con Creeden kept a place in Des Moines for the unlawful sale of intoxicating liquor, and was guilty of frequent violation of the law against their sale. The packages were marked with the word "Whiskey," and prior to the seizure in this case like packages had been received for and delivered to Con Creeden, one at a time, by the railroad company.

II. In *Bowman v. Railway Co.*, 125 U. S. 465; 8 Sup. Ct. Rep. 689, 1062, the United States supreme court has

held that the laws of this state restricting the transportation of intoxicating liquors from other states into this state are a regulation of commerce, and are therefore in conflict with the constitution of the United States, which it is held secures the right of transportation of articles of commerce from one state to another. The features of the Iowa statute held to conflict with the United States constitution are those which restrict the right of common carriers to transport intoxicating liquors into this state. The restriction upon the powers and rights of carriers is the point upon which it conflicts with the constitution of the United States. In so far as the statute prohibits the keepers of saloons, restaurants, warehouses or any other place, from keeping intoxicating liquors for unlawful sales, it does not conflict with the constitution of the United States. But, as commerce is dependent upon carriers for transportation of all articles of trade, their powers and rights cannot be restricted. We think there can be no doubt that this is the correct purport of this decision.

We do not understand that the United States supreme court has decided in this case, or in any other, that intoxicating liquors transported from another state may be sold within this state for uses forbidden by its laws. Indeed, the court expressly declares that the question is not in the case. The United States supreme court in many decisions has held that the states have the constitutional right to forbid the sale of intoxicating liquors within their borders. It appears that this controlling thought has escaped attention in the discussions upon the subject of the effect of the constitutional authority of congress to regulate commerce between the states upon the power of a state to forbid the sale of intoxicating liquors within its borders which are imported from another state. Commerce is not the use of articles of traffic. When the United States constitution conferred upon congress the power to regulate commerce between the states, it was not intended that provisions should be made by congress to affect the use of the subjects of commerce. It surely was not the

intention that laws should be enacted affecting the tastes, habits and wants of the people, so as to increase the demand for articles of traffic; nor could it have been intended that the governments of the states established by the people should be deprived of the power to repress the use of such articles of commerce as the state determines are detrimental to the morals, health, peace and prosperity of the people. The people, by their tastes, habits, wants and laws, enacted by themselves, determine what articles of commerce they will use. Commerce in the articles of traffic thus required by the people is regulated by congress. If the use of certain articles of commerce, as intoxicating liquors, is forbidden by the tastes, habits and laws of the people, it is not for the courts, by judicial interpretation of the constitution of the United States, to force them upon the people against their wishes, and against the laws of their own enactment. The people of the state, in their sovereign capacity, as rulers of their own domestic affairs, may declare that intoxicating liquors shall not be sold in the state for use as a beverage. The provision of the constitution of the United States in question cannot nullify such a state law, which is enacted in the exercise of full authority. Under it congress may regulate the traffic in such things until it comes to the point of their use as a beverage. There the authority to regulate commerce ceases to extend to the interdicted liquors, for they are no longer subjects of lawful commerce.

III.    A carrier is a servant of commerce, and is protected under constitutional provisions for the regulation of commerce in the discharge of all the duties of a carrier recognized by the law. Regulations of commerce reach him while he is in the discharge of duties pertaining to commerce. When he ceases to be a carrier he is beyond the protection provided by regulations for commerce. If he ceases to be a carrier and becomes a warehouseman, he cannot be protected as a carrier.

Recurring to the facts, it will be remembered that the liquor in question had been received at the place of

destination from six to fifteen days prior to the seizure, and was kept in the railroad freight-house, or warehouse used for storing freight transported or for transportation upon the railroad. It is a familiar rule of the law that upon the arrival of freight at the place of destination, and its deposit in the carrier's warehouse, his responsibility as carrier ceases. He becomes, as to the freight and the consignor and consignee, a warehouseman. *Francis v. Railway Co.*, 25 Iowa, 60 ; *Mohr v. Railway Co.*, 40 Iowa, 579; 2 Amer. & Eng. Cyclop. Law, 881 ; Ang. Carr. [5 Ed.] sec. 304, and cases cited in notes. The defendant did not, therefore, hold the liquor as a carrier, but as a warehouseman. As such he was the agent of Con Creeden, the bailor.

IV. But counsel for defendant say that the goods became impressed with the character of inter-state commerce, and retained that character after they went into custody of the warehouseman. In truth, commerce, so far as transportation is concerned, ceased to have connection with the liquors when they ceased to be held by the carrier for transportation. After that they were held for storage. It surely will not be contended that the storage of goods was a continuation of the transportation. They were stored because the transportation had ceased.

V. It is made plain by a consideration of the facts that the railroad company held the liquors under special arrangement with Con Creeden. Six successive shipments of liquor, each containing less than five gallons, are held for from six to fifteen days before they were seized, and it had been the practice of the railroad company for some time before these shipments were received to hold shipments of whiskey in the same way. The little freight-bills of thirty-four cents on each shipment were not paid until the package was delivered. Con Creeden did not present demands for the whiskey, but sent an express wagon to get a jug at a time, as it was wanted for sale in the saloon in violation of law. He was a notorious saloon-keeper and violator of the law. The packages were marked "Whiskey." All the circumstances lead

to the conclusion that the railway company held the liquor for Con Credeen under an agreement that it should aid him to evade the law. It cannot, under these circumstances, base any defense upon the fact that its freight charges were not paid. Had it dealt with Con Creeden with a purpose to obey the law, it would not have permitted its freight-bills to remain unpaid for so many days, and would not have permitted its warehouse to be used as a place where liquors kept for unlawful sale could be conveniently concealed and protected. In its attempt thus to violate the law, and to aid a notorious violator of the law to evade its provisions, it loses all claim or lien which it had, either as a carrier or a warehouseman, for its freight-bills of thirty-four cents each upon each jug of whiskey. A violator of the law will not be enabled to justify his offenses, and escape punishment therefor, on the ground of rights of property or other rights which he holds in things used in the commission of the offense. Con Creeden's right of property in the whiskey cannot shield him from the effects of his unlawful acts in keeping the whiskey for unlawful sale. Nor can the railroad company, which was engaged with and aided him in the violation of the law, defeat the proceeding and escape the judgment of the law, on the ground that it has a lien for trifling sums upon the liquors which it was keeping in violation of law. The foregoing discussion disposes of all questions in the case. The judgment of the district court is                                      AFFIRMED.