STATE, EX REL. COUNTY OF SEWARD, V. THOS. H. BENTON, AUDITOR.

[FILED JANUARY 27, 1892.]

1. County Bonds: REFUNDING.  In 1877 the legislature passed "An act to authorize the issue of county bonds in certain cases." This provided for issuing refunding bonds to replace bonds issued to railroad companies or any work of internal improvement.   This act was carried into the Compiled Statutes of 1881 as sections 11, 12, and 13, chapter 45.   In 1883 the legislature passed an act to authorize counties to issue refunding bonds, at not to exceed six per cent interest, to replace other bonds previously issued by the county and then payable.  Held, That the act of 1883 applied to all bonds previously issued by a county and then payable.

2. Statutes: REPEAL BY IMPLICATION.  The act of 1883 is a complete act, covering the whole of the matter embraced in the act of February 19, 1877, and repeals the first named act by implication.

3. ———: ———.  In 1885 the legislature passed an act amending sections 11, 12, and 13 of chapter 45 of the Compiled Statutes, which had been repealed by implication by the act of 1883. Held, That the amendatory act of 1885 was invalid.

4. County Bonds: REFUNDING.  Under the act of 1883, where a

county has issued refunding bonds bearing interest at six per cent, it may, after such bonds are payable, issue other refunding bonds at a lower rate of interest, as four and one-half per cent, to replace them.

ORIGINAL application for *mandamus*.

*Ed. C. Biggs* and *Bowman & Smith*, for relator:

The act of 1877 was repealed by the act of 1883, and the pretended amendment thereof in 1885 is a nullity. (*Knox County v. McComb*, 19 O. St., 320; *Dutton v. Aurora*, 114 Ill., 138; *Stingle v. Nevel*, 9 Ore., 62; *Haynes v. Cape May*, 52 N. J. L., 180; *Pennie v. Reis*, 80 Cal., 266; *Maxwell v. State*, 7 S. Rep. [Ala.], 824.) The bonds now sought to be refunded are not internal improvement bonds, and hence the act of 1883 alone applies. Section 2 of the act of 1883 is not a limitation upon the right to issue refunding bonds, but extends the right. (*Wayman v. Cochrane*, 35 Ill., 152; *Runnamaker v. Cordray*, 54 Id., 303.)

*Geo. H. Hastings, Attorney General, contra.*

MAXWELL, CH. J.

The plaintiff complains of the defendant and states: That the plaintiff is a county of the state of Nebraska, duly and legally incorporated and organized under the laws of the said state, and the defendant is the duly and legally elected, qualified, and acting, auditor of public accounts of the said state, and charged by law with the performance of the duties hereinafter mentioned.

2. The plaintiff further states to the court that on and prior to the first day of June, A. D. 1884, the plaintiff county was indebted to sundry persons in the sum of $104,000, said indebtedness being evidenced by certain coupon bonds for the said amount duly and legally issued by the said county.

3. That on the first day of June, 1884, the plaintiff county, by virtue of the power conferred upon it by chapter 18 of the Statutes of Nebraska, to-wit, the act entitled "An act to authorize counties to issue bonds for refunding their bonded indebtedness, and provide for registering and certifying the same, and for levying a tax to pay the interest and principal thereof," which said act was approved and took effect February 28, 1883; that under and by virtue of the power the plaintiff county, in the manner therein provided, issued its refunding bonds in the sum of $104,000, said bonds being dated the 1st day of June, 1884, bearing interest at the rate of six per cent per annum, payable semi-annually, and due on or before twenty years after the date thereof, at the option of the plaintiff county ; that the said bonds were issued in strict accordance with the law in such cases made and provided, and were duly and legally registered and certified by the auditor of public accounts and secretary of state of the state, and after being so registered, and certified in the manner provided by law, the same were sold, and with the proceeds derived from the sale thereof, the plaintiff county paid off the indebtedness herein first mentioned, the bonds evidencing the same being canceled and surrendered up to the plaintiff county.

4. The plaintiff states that the bonds so issued on the 1st day of June, 1884, were a legal and binding obligation against the said county of Seward, and constitute a valid debt of the same.

5. The plaintiff further states that the interest upon the bonds so issued on the 1st day of June, 1884, has all been paid up to and including the interest that fell due on the 1st day of June, 1891, but that no part of the principal thereof has been paid except $4,000 thereof, nor has the said county levied or collected any taxes or assessments with which to pay the principal thereof, except as hereinbefore stated.

6. The plaintiff further states that prior to the 1st day of May, 1891, a contract was entered into by and between the holders of the said bonds so issued on the 1st day of June, 1884, and the plaintiff county, by the terms of which the said holders of the said bonds agreed to accept in substance and exchange for the said bonds so issued on the 1st day of June, 1884, refunding bonds of the plaintiff county in the sum of $100,000, said bonds to bear interest at the rate of four and one-half per cent per annum, payable semi-annually, bearing date the 15th day of May, 1891, and due in twenty years after the date thereof, or at any time the plaintiff county might elect after five years from date thereof; said substitution and exchange to be made on the basis of dollar for dollar, i. e., refunding bonds for $100,000, dated May 15, 1891, bearing four and one-half per cent interest, and dated the 1st day of June, 1884. And this plaintiff states that it has reason to believe, and does believe, both parties to the said contract are willing to fully carry out and execute the terms of the same as herein set forth.

7. The plaintiff further states that for the purpose of carrying out the terms and provisions of the said contract, and for the purpose of lawfully issuing its refunding bonds to be so submitted and exchanged, the county board of the said plaintiff county, at a regular session thereof, held on the 3d day of March, 1881, authorized the issuance of the said bonds and adopted certain resolutions relative thereto, a true and certified copy of which is hereto attached, marked "Exhibit A," and made a part hereof.

8. The plaintiff states that in pursuance of the said aciton and resolution of the said county board, and by virtue of the power conferred upon the said plaintiff county by that part of chapter 18 of the Statutes of Nebraska, more fully described as "the act passed, approved and which took effect February 28, 1883, being "An act to authorize counties to issue bonds for refunding their bonded

indebtedness, and provide for registering and certifying the
same, and for levying a tax to pay the interest and princi-
pal thereof," the said county issued its said bonds in the
sum of $100,000, bearing date the 15th day of May,
1891, bearing interest at the rate of four and one-half per
cent per annum, said bonds being numbered from 1 to 100
inclusive and each for the sum of $1,000, the same being
due in twenty years from the date thereof, at the option of
the plaintiff county; the said bonds being executed in all
respects as required by law and in pursuance of the action
of the county board as herein set forth, a copy of said
bond, save the signature, is hereto attached, marked " Ex-
hibit B," and made a part hereof.

The plaintiff states that after the said bonds were au-
thorized in the manner aforesaid the same were signed by
the chairman of the county board of the said county in his
official capacity, and attested by the county clerk thereof
with his official seal, the same were then presented to the
defendant, as the auditor of public accounts for the state
of Nebraska, together with a certified copy of the proceed-
ings of the county board relative thereto, said bonds being
presented to the defendant for registration and certification
in the manner provided by law, but though tendered his
fees therefor the said defendant failed and refused to regis-
ter the same, and still fails and refuses to do so.

The plaintiff therefore prays the court for a writ of
*mandamus* requiring the defendant to appear and show
cause why the said bonds should not be registered and
certified by him, and that upon the hearing he be required
to register and certify to said bonds in his official capacity,
as required by law, and conform to such other order as the
court may deem just and legal, and to which the plaintiff
is entitled in the premises.

A number of minor objections are made by the defend-
ant to the petition which need not be noticed, but we will
proceed at once to the consideration of the main question

in the case, viz. : The authority of the county board of Seward county to issue the bonds in question.

In 1877 an act was passed by the legislature, entitled " To authorize the issue of county bonds in certain cases." This act was as follows:

"Section 1. That any county, precinct, or city in the state of Nebraska which has heretofore voted and issued bonds to aid in the construction of any railroad or other work of internal improvement, and which bonds, or any part thereof, still remain unpaid, and remain and are a legal liability against such county, and bearing interest at ten per centum per annum, is hereby authorized to issue coupon bonds at a rate of interest not exceeding eight per centum per annum, to be substituted in place of, and exchanged for, such bonds heretofore issued, whenever such county, precinct, or city can effect such substitution and exchange, which substitution and exchange shall be dollar for dollar.

" Sec. 2. The new bonds so issued shall have recited therein the object of its issue, the whole of the act under which the issue is made, stating the issue to be in pursuance thereof, and shall also state the number, date, and amount of the bond or bonds for which it is substituted, and such new bond shall not be delivered until the surrender of the bond or bonds so designated.

"Sec. 3. The new bonds so issued shall not require a vote of the people to authorize such issue, and they shall be paid, and the levy be made and tax collected for their payment in accordance with laws now governing the said bonds heretofore issued.

"Approved February 19, A. D. 1877."

In 1883 the legislature passed "An act to authorize counties to issue bonds for refunding their bonded indebtedness, and provide for registering and certifying the same, and for levying a tax to pay the interest and principal thereof." This act is as follows:

"Section 1. That any county of this state is hereby authorized to issue its coupon bonds at a rate of interest not exceeding six per cent per annum, for the purpose of refunding its bonded indebtedness, said bonds to be substituted in place of and exchanged for bonds heretofore issued whenever such county can effect such substitution and exchange, which substituted bonds shall equal the amount due for principal and interest of such bonded indebtedness, with interest payable semi-annually, and the principal payable not exceeding twenty years from their date.

"Sec. 2. The provisions of the foregoing section and of this act shall apply to and include all bonds heretofore issued by any county which have been held and determined to be valid and binding in the hands of *bona fide* holders thereof, in any action or actions thereon, or on any coupon thereof, by any state or federal court of competent jurisdiction within this state, and such bonds with the interest thereon constitute a bonded indebtedness within the meaning of this act.

"Sec. 3. That in all cases where the bonds of any county are past due, and in all cases where counties have issued bonds that were redeemable at the option of the county board at a fixed time, and where said time has elapsed, the county board shall notify the holders of such bonds to present the same for redemption or exchange and substitution, and in case of the refusal of such bondholders to present the same for redemption or exchange and substitution, at the place where said bonds are made payable, the county shall not be liable to pay interest on said bonds in excess of the rate provided for as the interest of said refunding bonds, and such interest shall commence with the coupon next to become due after such notice has been given.

"Sec. 4. That in case an exchange of said bonds cannot be effected the county commissioners are hereby authorized

to sell said refunding bonds from time to time, at not less than their face value, in such sums as may be necessary to create a fund for the redemption of the outstanding bonds aforesaid, and the money realized from the sale of said refunding bonds shall not be expended or used for any other purpose than for refunding said outstanding bonds.

"Sec. 5. It shall be the duty of the auditor of state to register such substituted bonds, and of the secretary and auditor of state to certify the same, and a tax to pay the interest and principal thereof shall be levied in the same manner as is now provided by law or the constitution in the case of other county bonds.

"Sec. 6. That the county clerk of each county shall certify under the seal of the county to the auditor the number, amount, and description of each bond canceled or to be canceled and refunded, and the amount due thereon for principal and unpaid interest, and thereupon the auditor is authorized to register a similar amount of refunding bonds; but in no case shall the auditor register any refunding bonds in excess of the amount so certified to him by the county clerk as aforesaid; and that said bonds shall be entitled to registration as aforesaid in the order that they are presented to the auditor.

"Sec. 7. That the registration provided for in this act shall apply to all refunding bonds already issued or to be issued in conformity to the provisions of this act.

"Sec. 8. That counties are hereby authorized to refund their bonded indebtedness as provided for in this act, at dollar for dollar of said indebtedness, irrespective of the fact that said indebtedness exceeds ten per cent of the present valuation of the property of said county, and the same shall be registered as provided for in this act; and the refunding bonds hereby authorized may be issued by the commissioners of the county without submitting the proposition therefor to a vote of the electors.

"Sec. 9. That whereas an emergency exists, this act shall take effect from and after its passage.

"Approved February 28, A. D. 1883."

It will be observed that this act is complete in itself, and is broader and much more comprehensive than the act of 1877. It covers the class of bonds authorized to be issued by the act of 1877, and also all other bonded indebtedness.

It is claimed on behalf of the defendant "that the provisions of section 2 limit the rights of refunding to such bonds as have been held and determined to be valid and binding, in the hands of *bona fide* holders in any action or actions thereon, or on any coupon thereof, by any state or federal court of competent jurisdiction within this state." The language of the second section, however, clearly shows that such was not the intention. In the first section the power is given to issue the coupon bonds at a rate not exceeding six per cent, for the purpose of refunding its bonded indebtedness. This includes all bonded indebtedness, and the second section merely adds to this such bonds whose validity has been questioned but have been held to be valid by a competent tribunal, as in *State v. Alexander*, 14 Neb., 280. In the case cited the federal circuit court had sustained the bonds, and the attorneys for the county then believed that the federal supreme court would sustain them also, and sought to have the bonds refunded.

The act of 1883, as we view it, is a general law and applies to all bonded indebtedness of a county, and this court has no right to inject words of limitation therein. In effect, it is a remedial statute and the ordinary rules of construction as applied to such statutes are applicable to this. Refunding bonds can only be issued to take the place of bonds duly issued by the county, and section 6 of the act requires the county clerk, under the seal of the county, to certify to the auditor "the number, amount, and

description of each bond canceled or to be canceled and refunded, and the amount due thereon for principal and unpaid interest.    The auditor is thereupon authorized to register a similar amount of refunding bonds," but no more. Section 7 provides that the act shall apply to all refunding bonds, and the eighth section authorizes the refunding of bonded indebtedness, although it may exceed ten per cent of present value of the property.    Broader, or more comprehensive language could scarcely be used, and it was evidently the intention to cover all cases of bonded indebtedness.    As the act of 1883 fully covers all the matter embraced in the act of 1877, and is much broader and more comprehensive than that act, it repeals it by implication.    The provisions of the act of 1877 were incorporated into the Compiled Statutes of 1881 as sections 11, 12, and 13 of chapter 45, which, as we have seen, were repealed by implication by the act of 1883.

In 1885 the legislature passed "An act to amend sections 11, 12, and 13 of chapter 45 of Compiled Statutes of 1881, entitled 'Internal improvements,' and to repeal said sections.    This act authorizes any county or city which has heretofore issued bonds to aid in the construction of any railroad or other work of internal improvement which is a legal liability against the county, precinct, or city, and bearing interest at a greater rate than seven per cent, to issue bonds in exchange for the same, bearing interest at a rate not to exceed seven per cent.    This act requires four weekly publications to be made before issuing the refunding bonds.    The objection to this act is that it is based upon and proposes to amend an act which had previously been superseded by the act of 1883.    In speaking of repeals by implication, Judge Sutherland, in his recent valuable work on Statutory Construction, sec. 140, says: "Repealing effect of affirmative statutes conferring power and regulating its exercise.    In organizing the powers of government there is a definite and precise scheme or plan, and

a unity and singleness of means employed to carry it into effect.   There is but one chief magistrate, one legislature, one judiciary.   There is but one revenue system, one police system.   Public duties are defined and imposed on officers designated with certainty, without duplications or confusion, except by inadvertence.   The exercise of power by one over another must be authorized  by law;  its possession and scope will be such as is granted;  when granted, if the mode of its exercise be also prescribed, it must be followed.   In the grants, and in the regulation of the mode of exercise, there is an implied negative, an implication that no other than the expressly granted power passes by the grant; that it is to be exercised only in the prescribed mode."   It is true repeals by implication are not favored, but where there is a complete act covering the whole subject, as in that of 1883, it was clearly intended by the legislature to be exclusive to repeal the act above referred to, of 1877, as sections 11, 12, and 13 of the Compiled Statutes of 1881.   These sections, therefore, were not in force when it was sought to amend them by the act of 1885.   The general rule in such case is that the amendatory act is void, having nothing to rest upon. The act of 1883, therefore, is still in full force.

It appears that the present holder of the bonds of Seward county is willing to accept a lower rate of interest than the sum now being paid.   The county board has taken the necessary steps to refund such bonds, and thus enable the county to have the lower rate of interest.   This was clearly within the power of such board, and upon the presentation of the proper certificate from the county clerk of Seward county to the auditor showing that the refunding bonds presented to him are valid, it is his duty to certify the same.   It follows that a peremptory writ will be

ISSUED AS PRAYED.

THE other judges concur.