STATE OF NEBRASKA, EX REL. ARTHUR S. CHURCH-
ILL, ATTORNEY GENERAL, V. GEORGE P. BEMIS,
CHARLES H. BROWN, D. CLEM DEAVER, WILLIAM
J. BROATCH, PAUL VANDERVOORT, AND ALBERT C.
FOSTER.

FILED SEPTEMBER 17, 1895. No. 7947.

1. Constitutional Law: STATUTES: AMENDMENT: REPEAL.
Section 11, article 3, of the Constitution provides: "No law shall
be amended unless the new act contain the section or sections
so amended, and the section or sections so amended shall be
repealed." *Held*, That the term "repeal" is therein employed
in the sense in which it was understood when the constitution
was adopted in 1875.

2. ———: ———: ———: ———. It had before that time been
definitely settled as a rule of construction that the simultaneous
repeal and re-enactment of a statute in terms, or in substance,
is a mere reaffirmance of the original act, and not a repeal in the
strict or constitutional sense of the term.

3. ———: ———: ———: ———. The great object to be attained
by that provision of the constitution is certainty in legislation,
hence all that is required is that the amendatory act shall be
definite and certain as to the law amended, and germane to the
original act. (*State v. Babcock*, 23 Neb., 128.)

4. Metropolitan Cities: GOVERNMENT: FIRE AND POLICE COM-
MISSIONERS: CONSTITUTIONAL LAW: STATUTES. In 1887 an
act was passed entitled "An act incorporating metropolitan
cities, and defining, regulating, and prescribing their duties,
powers and government." In 1889 section 145 of said act was
amended by the addition thereto of a provision not affecting its
general scope and purpose, and the original section was repealed,
the title of the amendatory act being "An act to amend section
145 of an act etc., and to repeal said section as heretofore ex-
isting." In 1891 said section was further amended by the ad-
dition of a provision not affecting its general object, and the
section as amended was repealed, both acts preserving the num-
ber and language of the original section, except as affected by
such amendment. In 1895 an act was passed entitled "An act
to amend section 145 of 'An act incorporating cities of the met-
ropolitan class, and defining, regulating, and prescribing their

duties, powers and government,' approved March 30, 1887, and as subsequently amended." *Held*, That the act last mentioned is not inimical to the constitution on the ground that the original section was repealed by the act of 1889.

5. Constitutional Law: STATUTES: TITLES OF BILLS. The provision of section 11, article 3, of the constitution, viz., " No bill shall contain more than one subject, and the same shall be clearly expressed in the title," was intended to prevent surreptitious legislation and not to prohibit comprehensive titles. The test is not whether the title chosen by the legislature is the most appropriate, but whether it fairly indicates the scope and purpose of the act.

6. Statutes: REPEAL BY IMPLICATION. An act which embraces the entire subject-matter of a prior act and also additional provisions will be construed as a repeal of the latter by implication.

7. Metropolitan Cities: PROVISION OF CHARTER FOR FIRE AND POLICE COMMISSIONERS: PARTY AFFILIATIONS: CONSTITUTIONAL LAW: COMITY. The provisions of the charter of the city of Omaha for a board of fire and police commissioners composed of three members "at least one from each of the two political parties casting the largest number of votes at the last preceding general election," does not conflict with the constitution of this state or the constitution of the United States in prescribing party affiliation as a qualification for office. If such provision be not mandatory in the sense that it is binding upon the appointing power,—a question not decided,—it is at least advisory and will be accorded consideration consistent with the comity existing between different departments of government.

8. ——— : ——— : TIME STATUTE TOOK EFFECT. The act of 1895 amendatory of the act of 1887 (Session Laws, 1895, ch. 10) was passed over the veto of the governor April 4, but did not, under the provisions of section 24, article 3, of the constitution, take effect until three calendar months after the adjournment of the legislature for that session. *Held*, That the provision therein for the appointment of fire and police commissioners for cities of the metropolitan class within thirty days from its passage refers to the time when said act took effect as a law.

9. ——— : APPOINTMENT OF FIRE AND POLICE COMMISSIONERS: ABSENCE OF MEMBER OF APPOINTING BOARD : VALIDITY OF PROCEEDINGS. In the absence of a special provision to the contrary, the presence of all the members thereof is not indispensable to the transaction of business by a public body or board. Where members having reasonable notice neglect to at-

tend the meetings of a board charged with duties to the public,
the action of those present, if a majority of all or a quorum au-
thorized by statute or by law, is the action of the board and
equally binding as if all had attended and expressly assented
thereto.

ORIGINAL action in the nature of *quo warranto*, on the
relation of the attorney general, to determine the rights of
rival claimants to the offices of fire and police commission-
ers of the city of Omaha. *Judgment in favor of William J.
Broatch, Paul Vandervoort, and Albert C. Foster.*

The facts are stated in the opinion.

*A. S. Churchill, Attorney General,* for the state.

*E. W. Simeral* and *Greene & Breckenridge,* for respond-
ents George P. Bemis, Charles H. Brown, and D. Clem
Deaver:

The act of 1895, chapter 10, Session Laws, is void be-
cause the section of the act it purports to amend and repeal
did not exist, and it therefore has nothing to rest on. (*Ex
parte McCardle,* 7 Wall. [U. S.], 514; *Coffin v. Rich,* 45
Me., 507; *Dogge v. State,* 17 Neb., 143; *State v. Berka,* 20
Neb., 377; *State v. Babcock,* 23 Neb., 133; *State v. Ben-
ton,* 33 Neb., 834; *Trumble v. Trumble,* 37 Neb., 340; *City
of South Omaha v. Taxpayers' League,* 42 Neb., 671; *Bur-
nett v. Turner,* 87 Tenn., 124; *Hall v. Craig,* 125 Ind., 523;
*Wall v. Garrison,* 11 Col., 515; *Maxwell v. State,* 89 Ala.,
150; *Louisville & N. R. Co. v. City of East St. Louis,* 134
Ill., 656; *Sovereign v. State,* 7 Neb., 409; *Smails v. White,* 4
Neb., 353; *Stricklett v. State,* 31 Neb., 674; *Smith v. State,*
34 Neb., 689.)

The act is void as being in violation of the constitutional
provision that no bill shall contain more than one subject,
and the same shall be clearly expressed in its title. (*White
v. City of Lincoln,* 5 Neb., 516; *Ives v. Norris,* 13 Neb.,
252; *Wall v. Garrison,* 11 Col., 515.)

The act is broader than its title and is therefore void. (*Trumble v. Trumble*, 37 Neb., 340; *People v. Denahy*, 20 Mich., 349; *Weigel v. City of Hastings*, 29 Neb., 379; *Wolf v. Taylor*, 98 Ala., 254; *State v. Nomland*, 3 N. Dak., 427; *Elliott v. State*, 91 Ga., 694; *Clark v. Board of Commissioners of Wallace County*, 39 Pac. Rep. [Kan.], 225; *Commonwealth v. Samuels*, 14 Pa. C. C. Rep., 423; *Perkins v. City of Philadelphia*, 156 Pa. St., 539; *People v. Fleming*, 7 Col., 230; *City of Grand Rapids v. Burlingame*, 93 Mich., 469; *Gatling v. Lane*, 17 Neb., 84; *In re White*, 33 Neb., 819.)

The act is unconstitutional for the reason that it is in conflict with other sections of the city charter. (*Trumble v. Trumble*, 37 Neb., 347; *City of South Omaha v. Taxpayers' League*, 42 Neb., 671; *Ex parte Hewlett*, 40 Pac. Rep. [Nev.], 96.)

Two members of the old board were appointed for four years from May 7, 1895. They are not legislated out by any express provision of the act. They have never been tried and removed. At the time of their appointment their term of office was fixed by law. They should be permitted to serve out their term. (*State v. Board of Public Lands and Buildings*, 7 Neb., 42; *State v. McColl*, 9 Neb., 203; *State v. Seay*, 64 Mo., 89.)

The provision of the act making party affiliation a test of eligibility to office is in conflict with section 1 of the fourteenth amendment of the constitution of the United States providing, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law." The provision violates section 3 of the state bill of rights. It also violates section 15 of article 3 of the state constitution providing that the legislature shall not pass local or special laws "granting to any corporation, association, or individual any special or exclusive privilege, immunity, or

franchise whatever." (*Attorney General v. City of Detroit,* 58 Mich., 213; *City of Evansville v. State,* 118 Ind., 426; *Rogers v. City of Buffalo,* 123 N. Y., 173.)

The law is incapable of execution, and therefore void. (Sutherland, Statutory Construction, secs. 237, 238.)

The new board was not legally appointed. Where a power is conferred upon three or more persons in a matter of public concern, requiring the exercise of discretion and judgment, and contains no directions respecting the number of those who may exercise the power, such exercise will not be valid unless all act, or unless all meet for consultation. After a legal meeting has taken place a majority may govern. (*People v. Coghill,* 47 Cal., 361; *Scott v. Detroit Young Men's Society,* 1 Doug. [Mich.], 121; *State v. Wilksville,* 20 O. St., 293; *Hudley v. Mayor of City of Albany,* 33 N. Y., 606; *People v. Whiteside,* 23 Wend. [N. Y.], 9; 26 Wend. [N. Y.], 634.)

In absence of an emergency clause the act in providing that the commissioners shall be appointed within thirty days after its passage violates the following provision of the constitution: "No act shall take effect until three calendar months after the adjournment of the session at which it was passed, unless in case of emergency." (*Harding v. People,* 10 Col., 387.)

Courts should not hesitate to declare legislative acts invalid when they are found to be in substantial conflict with the fundamental law of the state. (*State v. Bartley,* 41 Neb., 277.)

*Hall, McCulloch & Clarkson,* for respondents William J. Broatch, Paul Vandervoort, and Albert C. Foster:

The appointment by a majority of the board is valid. (*Williams v. Inhabitants of School District,* 21 Pick. [Mass.], 82; *Horton v. Garrison,* 23 Barb. [N. Y.], 179; *Sprague v. Bailey,* 19 Pick. [Mass.], 442; *First Nat. Bank of Bennington v. Town of Mt. Taber,* 52 Vt., 87; *Louk v. Woods,*

15 Ill., 256; *Walker v. Rogan,* 1 Wis., 597*; *Merchant v. North,* 10 O. St., 251; 19 Am. & Eng. Ency. Law, pp. 465, 466; *Hopkins v. Scott,* 38 Neb., 661.)

In support of an argument in favor of the constitutionality of the act the following cases were cited: (*State v. Seavey,* 22 Neb., 451; *State v. Smith,* 35 Neb., 13; *Perry v. Gross,* 25 Neb., 826; *In re White,* 33 Neb., 812; *Miller v. Hurford,* 13 Neb., 13; *Gatling v. Lane,* 17 Neb., 81; *State v. Ream,* 16 Neb., 681; *State v. Mayor of Kearney,* 28 Neb., 110; *State v. McColl,* 9 Neb., 203; *Taylor v. Courtnay,* 15 Neb., 190; *Lawson v. Gibson,* 18 Neb., 137; *State v. Babcock,* 21 Neb., 599; *Brome v. Cuming County,* 31 Neb., 362; *State v. Maccuaig,* 8 Neb., 215; *State v. Howe,* 28 Neb., 618.)

The provision for the appointment of officers of different political affiliations does not invalidate the act. (*State v. Seavey,* 22 Neb., 454; *State v. Smith,* 35 Neb., 13; *People v. Hurlbut,* 24 Mich., 93.)

The expression in the law referring to the time the appointment should be made was intended to mean thirty days after the act took effect. (*Hardin v. People,* 10 Col., 387.)

Post, J.

This is an original proceeding in the nature of a *quo warranto,* on the relation of the attorney general, under the provisions of section 714 of the Civil Code, to determine the rights of the respondents, who claim to be members of the board of fire and police commissioners for the city of Omaha. By section 145 of the act of 1887, entitled "An act incorporating metropolitan cities, and defining, regulating, and prescribing their duties, powers and government," hereafter referred to as the charter of the city of Omaha, provision is made for a board of fire and police commissioners consisting of five members, to-wit, the mayor, and four electors of said city to be appointed by the governor. In 1889 and 1891 said section was amended by the addition

thereto of provisions to which reference will be hereafter made, but which do not call for notice in this connection. In 1895 an act was passed entitled "An act to amend section 145 of an act entitled 'An act incorporating metropolitan cities, and defining, regulating, and prescribing their duties, powers and government,' approved March 30, 1887, and as subsequently amended, and to repeal said section," and which it is conceded took effect not later than August 1 following, unless void for reasons hereafter considered. By the last mentioned act provision is made for a board of fire and police commissioners consisting of three members to be appointed by the governor, attorney general, and commissioner of public lands and buildings. It is disclosed by the pleadings upon which the cause is submitted, that on the day last named said board was composed of the following members, to-wit: Howard B. Smith, Virgil O. Strickler, D. Clem Deaver, and Charles H. Brown, all of whom had been in due form appointed by the governor, and Geo. P. Bemis, mayor of said city, and will, for convenience, be referred to as the old board. On the 2d day of August the respondents, William J. Broatch, Paul Vandervoort, and Albert C. Foster, were named as fire and police commissioners under the provisions of the act of 1895, the record of their appointment being as follows:

"AUGUST 2, 1895, 10 o'clock A. M.

"Appointing board for the appointment of fire and police commissioners for cities of metropolitan class met pursuant to written notice heretofore given of said meeting. Present, H. C. Russell, Com. P. L. & B., and A. S. Churchill, Attorney General.

" Whereupon the following proceedings were had: Hon. H. C. Russell was chosen chairman *pro tem.* and A. S. Churchill secretary. The meeting being called to appoint fire and police commissioners of the city of Omaha.

" Whereupon W. J. Broatch was appointed one of the said fire and police commissioners of said city for the term

ending December 31, 1895, Paul Vandervoort for the term ending December 31, 1896, and A. C. Foster for the term ending December 31, 1897, and commissions instructed to be issued accordingly.

"There being no other business, after waiting until 11 o'clock A. M. of said date the board adjourned.

"Record read and approved.   H. C. RUSSELL,

"*Chairman pro tem.*

"A. S. CHURCHILL,

"*Secretary.*"

Said respondents subsequently qualified in the manner prescribed by law, and will be referred to as the new board. Messrs. Strickler and Smith, upon the appointment and qualification of the new board, recognized the title of the latter and refuse to join in resisting their claims to the offices in controversy.

It should be remarked, as preliminary to an examination of the cause on its merits, that this court is not the keeper of the legislative conscience, and that the motives of members of the respective houses, or the wisdom and propriety of the act involved, present no question of judicial cognizance.   That act is, we may assume, as are most if not all measures of like character, wholly indefensible; still the caustic arraignment of counsel should have been addressed to another department of the government, since it is not within our province to criticise or defend it as a matter of legislative policy.   It should be remembered, too, that all presumptions are in favor of legislative acts, and that no act will be declared invalid unless plainly and irreconcilably in conflict with the constitution.   With these general observations we will proceed to a consideration of the questions discussed, and which will, so far as practicable, be examined in the order presented by counsel for the old board.

It is in the first place claimed that section 145 of the act of 1887 was repealed by the act of 1889 amendatory thereof, and that the attempted amendment of 1895 is ac-

cordingly without force or effect. That argument renders necessary an examination of the several acts mentioned, so far as they relate to the subject in hand. Section 145, as originally adopted, not only provides for a board of fire and police commissioners, not more than two of whom shall belong to one political party, but also, in explicit terms, defines their powers and duties. The act of 1889, entitled "An act to amend sections * * * 145, * * * and to repeal said sections as heretofore existing," is a literal re-enactment of the section amended, except that it provides for the government and control of the police of the city in accordance with rules adopted by the board of fire and police, instead of by ordinance; and the further provision therein for the giving of bonds by the members of the board. The act of 1891 provides for the appointment of the members of the board from the three political parties casting the largest number of votes at the last preceding election, but is otherwise a re-enactment of section 145 as previously amended. The following paragraph from the brief of counsel is the strongest possible presentation of the question from the standpoint of the old board:

"Section 145 was amended by section 46, chapter 13, Laws, 1889, and the section as originally enacted was repealed, so that it ceased then to exist. Section 46, act of 1889, was carried into the Compiled Statutes as section 145, chapter 12a, entitled 'Cities of the Metropolitan Class,' and was in turn amended by section 32, chapter 7, Laws, 1891, in the title of which it was designated as section 145 of chapter 12a, Compiled Statutes, and the section amended was expressly repealed. So that section 145, chapter 12a, Compiled Statutes then ceased to exist, and the law that continued thereafter in force was neither section 145 of the act of 1887, nor section 46 of the act of 1889, but section 32 of the act of 1891, and, as section 145 of the act of 1887 had not been in existence since 1889, the act of 1895 touches nothing and is absolutely void."

State v. Bemis.

The fallacy of that argument lies in the assumption that the effect of the amendatory acts is in any proper sense a repeal of the original section. True, as provided by section 11, article 3, of the constitution, "No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed," but the term "repeal" is therein evidently employed in the sense in which it was understood at the time the constitution was adopted. It had before that time been definitely settled as a rule of construction that the simultaneous repeal and re-enactment of the same statute in terms or in substance is a mere affirmance of the original act, and not a repeal in the strict or constitutional sense of the term (*Ely v. Holton*, 15 N. Y., 595; *Moore v. Mansert*, 49 N. Y., 332; *Fullerton v. Spring*, 3 Wis., 667; *Middleton v. New Jersey & W. L. R. Co.*, 26 N. J. Eq., 269; *Wright v. Oakley*, 5 Met. [Mass.], 406; *Pacific Mail Steamship Co. v. Joliffe*, 2 Wall. [U. S.], 450), and the rule thus stated has been distinctly recognized by this court. (See *State v. McColl*, 9 Neb., 203, and *State v. Wish*, 15 Neb., 448.) In the case last cited MAXWELL, J., uses the following language: "We hold, therefore, that where the re-enactment is in the words of the old statute, and was evidently intended to continue in force the uninterrupted operation of such statute, that the new act or amendment is a mere continuation of the former act and is not in a proper sense a repeal." The following recent cases are in harmony with the foregoing and sustain the validity of the act assailed: *Commonwealth v. Kenneson*, 143 Mass., 418; *Hebrew Association v. Beushimal*, 130 Mass., 327; *Hancock v. District of Perry Township*, 78 Ia., 556; *State v. Kibling*, 63 Vt., 636. The act of 1891 did not abolish section 145 as originally enacted, or as amended in 1889, but, on the contrary, re-enacted it in terms with the exceptions above noted. Nor is the fact that the act of 1891 refers to the section as it appears in the Compiled Statutes at all ma-

terial, since it was the original act which was amended, the reference to the compilation being for convenience only.

Of the cases to which we are referred by counsel for the old board, *Coffin v. Rich*, 45 Me., 507, has been cited as an apparent exception to the rule above stated (see 23 Am. & Eng. Ency. of Law, 515); but the later statute, as appears from a careful examination of that case, imposed upon stockholders of corporations a liability different from that of the former act, and was construed as a technical repeal rather than a mere re-enactment of the old law. In *Louisville & N. R. Co. v. City of East St. Louis*, 134 Ill., 656, the facts are not fully reported, but it appears from the opinion of the court that the legislature had attempted to amend a section which "had been previously amended by a distinct and complete section." It cannot be determined whether the act referred to was amendatory merely, or whether it substituted new and distinct provisions for the original section. In *State v. Benton*, 33 Neb., 823, the act sought to be amended had been repealed by implication, leaving nothing to which the amendatory act could apply. In *Hall v. Craig*, 125 Ind., 523, the question of the validity of the later statute was not determined, the court preferring to treat the acts as *in pari materia*, although earlier decisions of that court seem to sustain the proposition here asserted, and may be regarded as exceptions to the rule. Other cases cited deal with repeals proper rather than amendatory acts, and need not be examined at length. The great object to be attained by the constitutional requirement is certainty in legislation, and to avoid the doubt and perplexity which would inevitably result from the amendment of statutes by reference to sentences or words. As said by this court in *State v. Babcock*, 23 Neb., 128: "All that the law requires is that the amendatory statute shall be definite and certain as to the statute amended, and germane to the title of the original act." When tested by that rule it would seem that the reference

to the prior act as section 145 of the act of 1887, "and as subsequently amended," is not appropriate merely, but is probably the most accurate that could have been devised, since it satisfied the demand of the constitution and is consonant with reason.

It is next argued that the provisions of the law of 1895 for the removal, by the officers designated as the appointing board, of fire and police commissioners for official misconduct is broader than its title, and accordingly invalidates the entire act; but that law is, as we have seen, amendatory of the law of 1887, and not an independent measure, hence we must look for its title to the act last mentioned. We shall not examine the cases cited from other states, since every phase of the question presented has been fully considered by this court. The constitutional requirement, viz., "No bill shall contain more than one subject, and the same shall be clearly expressed in its title," (Constitution, sec. 11, art. 3,) was intended to prevent surreptitious legislation, and not to prohibit comprehensive titles. The test is not whether the title chosen is the most appropriate, but whether it fairly indicates the scope and purpose of the act. (*Boggs v. Washington County,* 10 Neb., 297; *State v. Ream,* 16 Neb., 681; *State v. Babcock,* 23 Neb., 128; *Kansas City & O. R. Co. v. Frey,* 30 Neb., 790; *Paxton & Hershey Irrigating Canal & Land Co. v. Farmers & Merchants Irrigation & Land Co.,* 45 Neb., 884.) Authority to remove unfaithful officers is a proper if not a necessary incident of municipal government, and the provision therefore is obviously within the title of the act "defining, regulating, and prescribing the duties and powers and government of cities of the metropolitan class."

Another criticism of the act under consideration is that it conflicts with certain other sections of the city's charter not therein referred to, among which are mentioned section 149a, chapter 12a, Compiled Statutes, authorizing the appointment of a police matron by the mayor, and section

167, providing that the mayor shall receive as a member
of the board of fire and police commissioners the compen-
sation allowed other members of said board. Section 149a
is not found in the act of 1887, but in the act of 1893,
entitled "An act to provide for the appointment of a police
matron in cities, and to repeal any law inconsistent here-
with." That the act of 1895 conflicts with those provis-
ions is obvious, and since it embraces the entire subject-
matter of the sections mentioned, operated as a repeal
thereof by implication. (*Brome v. Cuming County*, 31 Neb.,
362; *State v. Benton*, 33 Neb., 823.)

It is argued that the act under consideration violates the
constitution of the state and the constitution of the United
States by making party affiliation a qualification for office.
The particular provision of the act assailed is the follow-
ing: "The said appointing board shall, within thirty days
from and after the passage of this act, appoint as the com-
missioners above named three citizens, at least one from
the two political parties casting the largest number of
votes for governor at the last preceding general election.
One of these shall be designated in said appointment to
serve until December 31, 1895, the second until December
31, 1896, and the third until December 31, 1897." The
constitutional restrictions above referred to are section 3 of
our bill of rights, viz., "No person shall be deprived of
life, liberty, or property without due process of law," and
section 15, article 3, as follows: " The legislature shall not
pass local or special laws   *   *   *   granting to any cor-
poration, association, or individual any special or exclusive
privileges, immunity, or franchise whatever;" also section
1 of the fourteenth amendment to the constitution of the
United States, viz., "No state shall make or enforce any
law which shall abridge the privileges or immunities of
citizens of the United States, nor shall any state deprive
any person of life, liberty, or property without due process
of law." The question here presented was considered in

*State v. Seavey,* 22 Neb., 454, and *State v. Smith,* 35 Neb., 13, and determined adversely to the foregoing contention. We have, however, on account of the importance of the subject, concluded to briefly re-examine it in the light of authority.

Of the cases cited by counsel for the old board, *Attorney General v. City of Detroit,* 58 Mich., 213, cannot be regarded as authority, in view of the express restriction of the constitution of that state, which, after prescribing the form of oath to be taken by public officers, concludes as follows: "And no other oath, declaration, or test shall be required as a qualification for any office or public trust," while the only provision of our constitution upon the subject is that found in section 4 of the bill of rights, viz., "No religious test shall be required as a qualification for office." *City of Evansville v. State,* 118 Ind., 426, appears to be in point, but that case, if not indeed overruled, is opposed to the doctrine stated in the subsequent case of *Hovey v. State,* 119 Ind., 386, in which Elliott, C. J., uses this language: "It is within the authority of the legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience." Opposed to the contention of counsel are two classes of cases, of which the first, and more numerous, assert, without qualification, the power of the legislature, in the absence of express constitutional restriction, to prescribe particular qualifications for holding office, such as political affiliation. Other cases regard like provisions as directory, or, more accurately speaking, advisory merely, and binding upon the appointing power only within the limits of the comity existing between different departments of government. Of the first class may be mentioned the following cases: *Hovey v. State, supra; State v. Finger,* 28 N. E. Rep. [O.], 135; *Rogers v. City of Buffalo,* 123 N. Y., 173; *People v. Hoffman,* 116 Ill., 587; *Patterson v. Barlow,* 60 Pa. St.,

51

54.   Among those which regard the provisions under consideration as advisory merely, may be cited the following: *In re Supervisors*, 43 Fed. Rep., 859; *State v. Seavey, supra,* and opinion of Cooley, J., in *People v. Hurlbut*, 24 Mich., 44.   It is unnecessary to pursue the subject by examining the merits of the views thus stated, as both are adverse to the contention of counsel and are, it is believed, alike harmonious with the letter and spirit of our constitution.   We observe in recent legislation, state and national, numerous acts of this character, and which have, except in the instances cited, been respected by both executive and judicial departments of the government.   A familiar illustration is the provision of the Revised Statutes of the United States for juries drawn by commissioners of different parties. Another is the law in force for many years for the appointment by the circuit court of supervisors of elections in certain cases.   These statutes, although frequently before the courts for construction, have never, within our knowledge, been assailed as unconstitutional. (See *United States v. Paxton*, 40 Fed. Rep., 136; *In re Supervisors*, 43 Fed. Rep., 859; *In re Supervisors*, 20 Blatch. [U. S.], 13.)   But a case directly in point, which has apparently been overlooked by counsel for both parties, is the appointment by us of the present supreme court commission under the act of 1893. That act, it will be noticed, provides that no two of the three commissioners therein authorized, shall be members of the same political party.   Every phase of the question was examined by the court as then organized and although a doubt was expressed as to the right of the legislature to control the discretion of the appointing power, we agreed that the provision mentioned was at least directory, a courteous request of the law-making power, to which full respect was accorded in the selection of our esteemed associates of the commission.   The act last referred to having been subsequently assailed for the reasons now urged among others, was, after full consideration, held not to conflict

with the constitution of the state. (*In re Supreme Court Commissioners*, 37 Neb., 655.) It is thus apparent that the contention of counsel is without merit, being opposed both by reason and the pronounced weight of authority.

It is said that the act is inconsistent and incapable of execution by reason of the provision therein for the appointment of the board of fire and police within thirty days from and after its passage, to-wit, April 3, 1895, whereas said act did not take effect until three calendar months after the adjournment of the legislature for that session. (Constitution, sec. 24, art. 3.) To one familiar with legislative methods in this state, the apparent inconsistency suggests its own explanation, viz., that the bill, as originally introduced, contained an emergency clause providing that it should take effect upon its passage, and which was subsequently eliminated without amending the other provisions thereof so as to conform to its altered condition. It is evident that by the expression, "within thirty days from and after the passage of this act," is meant thirty days from the time when said act took effect as a law. Where a statute is ambiguous the courts, following established rules of construction, adopt that interpretation which will best promote its general object. (Endlich, Interpretation of Statutes, 196; *State v. Allen*, 43 Neb., 651.) The cases are numerous in which the foregoing general principle has been held applicable to facts substantially like those here involved. (See *Harding v. People*, 10 Col., 387; *Charles v. Lamberson*, 1 Ia., 435; *Price v. Hopkin*, 13 Mich., 327.) In *Harding v. People, supra*, it is said: "In the absence of any emergency clause in view of the constitutional provision, the expression 'after the passage of the act,' as used in the law, can have but one meaning, namely, after the act goes into effect." With the view thus expressed we are entirely satisfied.

Finally, it appears from the record that the governor, for reasons to him appearing sufficient, but which need not

be discussed in this connection, declined to take any action whatever under the act above mentioned, and, although notified of the meeting called by the other members of the appointing board, refused to attend or in any manner participate in the selection of fire and police commissioners. It is argued that the concurrent action of the three state officers named in the act is essential to a valid appointment thereunder, hence the selection of the new board at such meeting in the absence of the governor is without authority and void; but to that proposition we cannot give our assent. On the contrary, it is clear that the presence and participation of the governor was not indispensable, he having been notified of the meeting and requested to attend. The action of the majority is, under the circumstances, the action of the board, and equally binding as if all had attended and expressly assented thereto. (*McInroy v. Benedict,* 11 Johns. [N. Y.], 402; *Horton v. Garrison,* 23 Barb. [N. Y.], 176; *Gildersleeve v. Board of Education,* 17 Abb. Pr. [N. Y.], 201; *Walker v. Rogan,* 1 Wis., 597; *Merchant v. North,* 10 O. St., 251; Throop, Public Officers, 112; Mechem, Public Officers, 572.) The reason upon which that doctrine rests is that public interests shall not be prejudiced by the neglect or caprice of a single member of a public body in failing or refusing to attend upon sufficient notice of its meetings; but where the law expressly requires the concurrent action of all the members of a board or body, all must participate therein, although that rule has no application to the act under consideration, which does not expressly, or by implication, require the action of all the members of the appointing board. We must not, from what is here said, be understood as indulging in any criticism upon the act of the governor, whose motives in refusing to co-operate with the other members of the appointing board are not impugned in this proceeding. It follows, however, from what has been said, that the respondents Broatch, Vandervoort, and Foster are the legally appointed

members of the board of fire and police commissioners and as such are entitled to the possession and emoluments of the offices in controversy.

JUDGMENT ACCORDINGLY.