STATE OF NEBRASKA, EX REL. D. H. WHEELER ET AL., V.
ERNEST STUHT ET AL.

FILED JUNE 26, 1897.    No. 9240.

1. **Statutes:** INVALID PROVISIONS: ENFORCEMENT OF VALID PORTIONS.
If a portion of a legislative act is unconstitutional and it can be
separated from other portions of the act and the latter enforced
independent of the former, and it further appears that the uncon-
stitutional part did not constitute such an inducement to the
passage of the other parts of the law that they would not have
been passed without it, the former may be rejected and the latter
upheld.

2. ——: ——: ——. The same rule obtains in relation to parts of
the sections of a statute, and that which is unconstitutional may,
under the operation of the foregoing rule, be rejected from a
section or sections of a law and what remains be sustained, unless
they are inseparably connected in substance.

3. **Municipal Corporations:** CREATION: DEFECTS. A legislature may
create a municipality without providing in all particulars for its
government, but that this has been done by a legislature is not
alone sufficient to render such law of creation invalid. It will be
presumed that a subsequent legislature will perform its duty and
will remedy the defect.

4. **Statutes:** SPECIAL LAWS. In determining whether an act of the leg-
islature is general or special in its character, the substance alone
should be considered. Forms or particular words or turns of ex-
pression should be disregarded.

5. ——: CREATION OF MUNICIPAL CORPORATIONS: CONSTITUTIONAL
LAW. "The classification of the cities of the state into classes and
subclasses and the conferring upon them of corporate powers by
acts of the legislature of a general nature, yet the provisions of
which are applicable to but one of such classes or subclasses, is
not repugnant to any provision of the constitution." *State v.
Graham,* 16 Neb., 74, approved and followed.

6. ——: ——: GENERAL LAWS. If the provisions of a law establish-
ing a class of cities on the basis of population are such that other
cities may in the future, without additional legislation, enter the
specified class, the law is general.

7. **Demurrer.** A demurrer searches the entire record and is applicable
and fatal to the first defective pleading.

8. **Quo Warranto:** RIGHT TO MAINTAIN ACTION. Where relators, in an
action of *quo warranto* to oust respondents from certain offices and
obtain possession thereof, base their right to the relief on the

18

unconstitutionality of a statute under which respondents claim to occupy the offices, and the arguments and reasons for declaring such law unconstitutional would be equally forcible and effective as against the law under which relators assert title to the offices, the relators have no standing and cannot prevail in the litigation.

9. Statutes: TIME PROVISIONS BECOME EFFECTIVE. A law is not open to the criticism that separate provisions of it take effect at different dates if as an entirety it becomes of effect and operative on a fixed date, notwithstanding, as to some persons or matters affected by it, the law is of full operation immediately upon its passing into effect, and as to others its operation is not so full and complete until in the future on the happening of some stated contingency.

10. ———: TITLES. "The provision of section 11, article 3, of the constitution, viz., 'No bill shall contain more than one subject, and the same shall be clearly expressed in the title,' was intended to prevent surreptitious legislation and not to prohibit comprehensive titles. The test is not whether the title chosen by the legislature is the most appropriate, but whether it fairly indicates the scope and purpose of the act." *State v. Bemis*, 45 Neb., 724, approved and followed.

11. ———: VALIDITY: OBJECTIONS: ISSUES. Where the relief sought rests on the establishment of the unconstitutionality of an act of the legislature, objections to detached portions of the act which if declared unconstitutional would not affect the validity of the other portions and remainder of the act, raise questions which are but collateral to the main issue and which are not necessarily for discussion or definite determination.

ORIGINAL action in the nature of *quo warranto* to oust respondents from the offices of councilmen of the city of Omaha, and to instate relators therein. *Writ denied.*

The opinion contains a statement of the case.

*Wright & Thomas, J. B. Sheean,* and *A. S. Churchill,* for relators:

Relators' first position is that the office of police judge is a constitutional office, made elective, and for a fixed term of two years; that the provisions of the new charter, approved March 15, 1897, shorten the term of the incumbent and undertake to establish, instead of the constitutional term, a term of three years; that the act, in

so far as it relates to the election and term of office and salary of police judge, is unconstitutional and void; and that these invalid provisions are so interwoven with the other parts of the act, and form so essential a part of the whole scheme of legislation, that the entire act must be declared invalid. (Constitution, secs. 1, 18, 20, art. 6; sec. 16, art. 3; *Wenzler v. People*, 58 N. Y., 516; *McDermont v. Dinnie*, 69 N. W. Rep. [N. Dak.], 294; *State v. Thoman*, 10 Kan., 197; *Martin v. Tyler*, 60 N. W. Rep. [N. Dak.], 392; *Scagit County v. Stiles*, 10 Wash., 388; *State v. Perry County*, 5 O. St., 497; *Jones v. Robbins*, 8 Gray [Mass.], 329; *Warren v. Mayor*, 2 Gray [Mass.], 84; *Trumble v. Trumble*, 37 Neb., 340; *State v. Moore*, 48 Neb., 870; *Poindexter v. Greenhow*, 114 U. S., 270; *Trade Marks Case*, 100 U. S., 82; *Copeland v. City of St. Joe*, 126 Mo., 417; *Slausen v. City of Racine*, 13 Wis., 398; *Commonwealth v. Potts*, 79 Pa. St., 164; *Meshmeier v. State*, 11 Ind., 484; *Allen v. Louisiana*, 103 U. S., 80; *Eckhart v. State*, 5 W. Va.; 515; *Johnson v. State*, 35 Atl. Rep. [N. J.], 787; *Lathrop v. Mills*, 19 Cal., 513; *State v. Sinks*, 42 O. St., 345; *State v. Blend*, 121 Ind., 514; *Dells v. Kennedy*, 49 Wis., 555; *Black v. Trower*, 79 Va., 123; *People v. Porter*, 90 N. Y., 68.)

The act in question is special, and therefore unconstitutional. (*Clegg v. School District*, 8 Neb., 178; *Dundy v. Richardson County*, 8 Neb., 518; *State v. Pugh*, 43 O. St., 98; *State v. City of Cincinnati*, 20 O. St., 18; *State v. Constantine*, 42 O. St., 437; *State v. Mitchell*, 31 O. St., 607; *Devine v. County Commissioners*, 84 Ill., 590; *State v. Smith*, 26 N. E. Rep. [O.], 1069; *Commonwealth v. Patton*, 88 Pa. St., 258; *State v. Hammer*, 42 N. J. Law, 435; *State v. Herrmann*, 75 Mo., 340; *City of Topeka v. Gillett*, 32 Kan., 431.)

The act is broader than the title, and includes subjects not within the title. It is therefore invalid. (*Blair v. State*, 90 Ga., 326; *City of Wahoo v. Dickinson*, 23 Neb., 426; *Village of Hartington v. Luge*, 33 Neb., 623; *City of Seward v. Conroy*, 33 Neb., 430; *Gottschalk v. Becher*, 32 Neb., 653; *County Commissioners v. Hiner*, 54 Kan., 334;

*Cherokee County v. Chew*, 44 Kan., 162; *Finnegan v. Sale*, 54 Kan., 420; *State v. Deets*, 54 Kan., 504; *Wheeler v. Chub-buck*, 16 Ill., 362; *Supervisors v. Keady*, 34 Ill., 293.)

The charter seeks to clothe the city council with judicial power. It seeks to give the council, or a committee thereof, all the power of courts of justice to compel the giving of testimony. This is a violation of the constitution. (*Langenberg v. Decker*, 31 N. E. Rep. [Ind.], 190; *Ex parte Doll*, 7 Phila. [Pa.], 595; *Kilbourn v. Thompson*, 103 U. S., 168; *In re Mason*, 43 Fed. Rep., 510.)

The act contravenes the 14th amendment to the constitution of the United States, which declares: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." (*Missouri v. Lewis*, 101 U. S., 22; *People v. Hurlbut*, 24 Mich., 93; *Ward v. Maryland*, 12 Wall. [U. S.], 418; *Anderton v. City of Milwaukee*, 52 N. W. Rep. [Wis], 96; *Frorer v. People*, 31 N. E. Rep. [Ill.], 395; *State v. Seavey*, 22 Neb., 467; *Low v. Rees Printing Co.*, 41 Neb., 137.)

*W. J. Connell, contra:*

Where a statute contains provisions which are invalid or unconstitutional, if the valid and invalid portions are not so connected as to be incapable of separation, and the valid part is a complete act and not dependent upon the part that is void, the latter alone will be disregarded and the remainder upheld. (*Bailey v. State*, 30 Neb., 855; *Singer Mfg. Co. v. Fleming*, 39 Neb., 685; *State v. Moore*, 48 Neb., 870; *State v. Hardy*, 7 Neb., 377; *State v. Board of Commissioners of Lancaster County*, 7 Neb., 85; *State v. Hurds* 19 Neb., 316; *In re Groff*, 21 Neb., 647; *State v. Van Duyn*, 24 Neb., 586; *Muldoon v. Levi*, 25 Neb., 457; *Messenger v. State*, 25 Neb., 674; *Magneau v. Fremont*, 30

Neb., 843; *State v. Stout*, 33 Atl. Rep. [N. J.], 858; *Lewis v. Lewelling*, 36 Pac. Rep. [Kan.], 351; *State v. Bailey*, 42 Pac. Rep. [Kan.], 374; *Dunn v. City of Great Falls*, 31 Pac. Rep. [Mont.], 1017; *Irvin v. Gregory*, 13 S. E. Rep. [Ga.], 120; *City of St. Paul v. Chicago, M. & St. P. R. Co.*, 68 N. W. Rep. [Minn.], 458; *People v. Perry*, 21 Pac. Rep. [Cal.], 423; *State v. Stout*, 33 Atl. Rep. [N. J.], 858; *McPherson v. Blacker*, 13 Sup. Ct. Rep., 3; *Henderson v. State*, 36 N. E. Rep. [Ind.], 257; *State v. Blend*, 23 N. E. Rep. [Ind.], 511; *Hale v. McGettigan*, 45 Pac. Rep. [Cal.], 1049; *City of Westport v. McGee*, 30 S. W. Rep. [Mo.], 523.)

The relators have no standing in court upon the ground of special legislation. If the present councilmen were unconstitutionally elected, so were the relators. If the new charter is unconstitutional the old one was. (19 Am. & Eng. Ency. Law, 677; Maxwell, Pleading and Practice, 724; *State v. Stein*, 13 Neb., 529.)

The act is not special legislation. (*State v. Graham*, 16 Neb., 74; *State v. Berka*, 20 Neb., 375; *McClay v. City of Lincoln*, 32 Neb., 412; *State v. Robinson*, 35 Neb., 402; *Hunzinger v. State*, 39 Neb., 653; *State v. Hunter*, 17 Pac. Rep. [Kan.], 184; *State v. Bemis*, 45 Neb., 735.)

The act contains but one subject, and the same is clearly expressed in its title. (*City of Omaha v. City of South Omaha*, 31 Neb., 379; *State v. Bemis*, 45 Neb., 724.)

The act takes effect at one time. (*Hopkins v. Scott*, 38 Neb., 661; *State v. Newbold*, 42 Pac. Rep. [Kan.], 345.)

HARRISON, J.

In this, an original action in this court, an information in the nature of a *quo warranto* was filed by the relators, in which it was averred that they had been elected and assumed the duties of councilmen in and for the city of Omaha, under and by virtue of the provisions of the law then in force, which was an act entitled "An act incorporating metropolitan cities and defining, regulating, and prescribing their duties, powers, and government," which

was passed and became of effect March 30, 1887 (see Session Laws, 1887, ch. 10; Compiled Statutes, 1895, note ch. 12a); that their offices were being and had been unlawfully invaded and usurped, the powers and duties performed, and the emoluments and privileges thereof enjoyed by the respondents. The relief sought is the ouster of the respondents and the establishment of the title of relators to the offices involved. The respondents answered pleading the passage by the legislature of 1897 of an act entitled "An act incorporating metropolitan cities and defining, prescribing, and regulating their duties, powers, and government, and to repeal an act entitled 'An act incorporating metropolitan cities and defining, regulating, and prescribing their duties, powers, and government,' approved March 30, 1887, and all acts amendatory thereof, being chapter 12a of the seventh edition of the Compiled Statutes of the state of Nebraska (edition of 1895), entitled 'Cities of the Metropolitan Class' " (Session Laws, 1897, ch. 10, p. 54); that the act of 1897 was approved March 15, 1897; that at an election held pursuant to the provisions and requirements of the act of 1897, the respondents were elected as councilmen in and for the city of Omaha, and had taken possession of the offices and were performing the duties thereof. There were other and further allegations in the answer, which put in issue the rights of relators to the offices which they claimed. To the answer a general demurrer was interposed, the general or broad question presented and discussed under the issue thus made being the constitutionality of the act of 1897, the rights of relators to the offices being predicated on its unconstitutionality and the continued existence of the act of 1887, and the rights of respondents to the offices based on the validity of the act of 1897.

The first point discussed by counsel is in relation to the police judge, and the provisions of the new act fixing the time of the election of said officer and the duration of his term of office. The section of the act of 1897 to which

our attention is particularly directed in this connection is as follows:

"Section 13. The first city election in all cities governed by this act shall be held on the sixth Tuesday after this act goes into effect, and the next general city election on the first Tuesday in March, A. D. 1900, and all succeeding general city elections every three years thereafter. Such elections shall be held at the same place as was the general election for state and county officials last preceding such city election. The officers to be elected at such election shall be a mayor, police judge, city clerk, treasurer, comptroller, tax commissioner, and nine (9) councilmen; they shall each and all be elected by a plurality of all votes cast at said election for such officials, respectively, and shall, when properly qualified, hold their offices for the terms herein designated, viz.: The terms of the officers first elected shall commence on the third Monday succeeding their election, and they shall hold office until the third Monday in March, A. D. 1900, and until their successors shall be elected and qualified; and all subsequently elected officers shall hold office for the term of three years, commencing on the third Monday succeeding their election, and shall hold their office until their successors shall be elected and qualified, except as in this act otherwise provided." (Session Laws, 1897, ch. 10, p. 57, sec. 13.)

It will be noticed that by the provisions of the section quoted the terms of office of the police judge, after the first one, are fixed each at three years. Section 1 of article 6 of the constitution is as follows: "The judicial power of the state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and in such other courts inferior to the district courts as may be created by law for cities and incorporated towns." By section 4 the terms of office of judges of the supreme court are fixed at six years; by section 10, terms of judges of the district courts at four years; and by section 15, county judges' terms at two years. Section 20 provides:

"All officers provided for in this article shall hold their offices until their successors shall be qualified, and they shall, respectively, reside in the district, county, or precinct for which they shall be elected or appointed. The terms of office of all such officers, when not otherwise prescribed in this article, shall be two years. All officers, when not otherwise provided for in this article, shall perform such duties and receive such compensation as may be provided by law." From which it is disclosed that police magistrates are constitutional officers, with a term of office prescribed by that instrument at two years. The term as fixed by the constitution cannot be extended by legislative act; neither can the term of such an officer be shortened by legislative enactment.

Under the act or charter of 1887, which the act of 1897 by its terms repealed, there had been elected a police judge, whose term of office, fixed by the constitution, will expire in January, 1898; this term could not be abridged by a statute, hence the act of 1897, to the extent it purports to affect such term, is invalid; also such portion of it as makes the term of office of a police judge three years instead of the constitutional term of two years is of no effect. It being determined that the law is invalid or unconstitutional in the particulars just indicated, brings us to the consideration of another and a vital question. viz., does such invalidity necessitate a rejection of the whole act? One test to be applied in the solution of the foregoing question is, did the enactment of the invalid portions of the statute constitute such an inducement to the legislators to the passage of the further parts of the law that the latter would not have been passed without the former? It seems quite clear that the mere designation of the time at which the police judge should commence his term of office, and the fixing the length of his term of office at three years, did not possess such significance or importance that the determination of the exact time of the inception of the term or its duration could, separately or combined, have operated as an inducement

for the passage by the legislature of this act, containing, as it did, what was intended for a complete and entire scheme or plan for the organization and government of a class of cities; and further, it seems clear that had the legislators known that either the time of the commencement of the term stated in the law, or the exact length of the term as fixed, must be abandoned, they would not have felt constrained to withhold approval from the other and more important parts of the act. The invalid portions were but minor parts of the law, and not governing in their nature, when viewed in the light of the purpose of the law as an entirety. Another test to be applied here is, may the constitutional and unconstitutional portions of the law in question be separated, and is the former so complete within itself and independent of the latter that the former will be operative and can be enforced without the latter? If so, the former will be upheld and the latter disregarded or rejected. The foregoing is the rule announced and enforced by this court. (See *State v. Hardy*, 7 Neb., 377; *State v. County Commissioners*, 17 Neb., 85; *State v. Hurds*, 19 Neb., 316; *In re Groff*, 21 Neb., 647; *State v. Van Duyn*, 24 Neb., 586; *Muldoon v. Levi*, 25 Neb., 457; *Messenger v. State*, 25 Neb., 674; *Magneau v. City of Fremont*, 30 Neb., 843; *Bailey v. State*, 30 Neb., 855; *Singer Mf'g Co. v. Fleming*, 39 Neb., 685; *State v. Moore*, 48 Neb., 870.) It has been further stated as a rule on this subject: "The constitutional and unconstitutional provisions may even be contained in the same section, and yet be distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance." (Cooley, Constitutional Limitations, 178*; 3 Am. & Eng. Ency. Law, 377; *State v. Hardy*, 7 Neb., 380.)

The law of 1897 provided for a police judge and prescribed fully his jurisdiction, powers, duties, etc. The only defects in the law were that his term of office could

not be for the length of time stated, and might not commence at the time fixed. The law of 1897 contained 194 sections, inclusive of the emergency clause and repealing section, in which there was legislation in relation to a complete set of city officers, their powers, duties, etc.; also legislation in regard to taxes, their assessment and levy, also in regard to public improvements and issuance of bonds; without further particularizing, the whole subject of a municipal organization, in its entire range and system, was intended to be and was quite effectually included in the legislative enactment. That almost every part of the law is wholly disconnected and independent of the portion in relation to the term of police judge, and does not need the last or its effect to render them complete and operative as integral portions of a system of city government, becomes apparent by a reading of the law. Turning our attention now directly to the enactment insomuch as it affects the police judgeship and the term thereof, it is clear that there is a police judge, whose term of office, being established by the constitution, cannot be interefered with or shortened by the legislature or its enactments, hence he will hold the office until January, 1898; and if it be said that there will then be a vacancy in the office, it may be suggested that possibly the charter of 1897 bears within itself the temporary relief or expedient wherein it states, section 184: "In case of a vacancy in the office of police judge by death, resignation, or otherwise, or in case of his absence, disability, or inability to perform his duty, it shall be the duty of any acting justice of the peace within the city, who shall be designated by the mayor, in writing, to act as police judge during such vacancy, absence, or inability in the trial of causes cognizable before the said judge." In relation to vacancies and when they exist we have section 20 of article 3 of the constitution, in which it is stated that offices created by the constitution shall become vacant on the happening of either of certain enumerated events. Of this it has been announced that it is not exclusive,

and vacancies in office may arise from other causes. In section 101 of chapter 26 of Compiled Statutes the legislature has provided that every civil office shall become or be vacant on the happening of either of certain specified events, and in the charter of 1897 the vacancies in the office of police judge which may occur are stated to be "by death, resignation, or otherwise." Whether the list of events contained in section 101, *supra*, the occurrence of any one of which will cause a vacancy in a civil office, is exclusive or not, and whether the "otherwise" contained in section 184 of the law of 1897 can have reference to or include none other, also whether the conditions existent by reason of the unconstitutional action of the legislature of 1897 in respect to the term of office of the police judge, will cause a vacancy in such office at the close of the term of the present incumbent, we will not now discuss or definitely determine or state. In this same connection we will further suggest that in section 20 of article 6 of the constitution, which we have hereinbefore quoted, it is stated: "All officers provided for in this article shall hold their offices until their successors shall be qualified. * * *" And in section 104 of chapter 26, Compiled Statutes, the same appears in substance; also in the law of 1897 under consideration, in section 13; and it has been said that where an incumbent of an office holds until his successor is elected and qualified, he continues not merely as a *de facto* officer, but as an officer *de jure*. (See *Richards v. McMillin*, 36 Neb., 355; also cases there cited, as follows: *State v. Howe*, 25 O. St., 588; *People v. Tilton*, 37 Cal., 614; *State v. Harrison*, 113 Ind., 434.) Without further suggesting or entering into details, we will say that we are satisfied that there is by the laws of the land a practical process for the enforcement of the laws and ordinances which will fall within the power and jurisdiction of the police judge in the cities of the class created by the law of 1897 now under discussion; but it is urged that any lawful method of meeting the difficulty which may be resorted to will be a makeshift,

and not to be tolerated or continued longer than the exigencies of the situation demand. This may be conceded. A legislature, in the absence of any extraordinary occurrences in human events, as now regulated by law in this state will convene in 1899, and to it must be relegated the labor of remedying the defect in the law of 1897 in regard to the term of office of a police judge in metropolitan cities. To do this will be of the bounden duties of such legislature, of its duties prescribed by the constitution, the law to which it will owe its creation and existence, and it will be presumed that it will do its duty and not that it will omit the performance of any.

It has been observed in the opinion in the case of *State v. Stout*, 33 Atl. Rep. [N. J.], 858: "The third reason for reversal is that the act of 1895 is inoperative and void, because it fails to provide a system of government for the proposed city. The seventh section provides that there shall be a mayor and city council, consisting of a councilman from each ward, and that all cities incorporated under said act shall be governed by the laws of this state 'relating to and regulating the government of cities,' passed April 24, 1894 (P. L. 75). The city may be legally constituted by one act, and the legislature, by another act, may give it the needed powers of government. (*Lakewood v. Township Committee*, 55 N. J. Law, 275, 26 Atl. Rep., 91.) The powers given in this case may be inadequate. If so, subsequent legislation will remedy the defect, or the city may accept the provisions of the act of 1894 above referred to. (*In re Cleveland*, 52 N. J. Law, 189, 19 Atl. Rep., 17.) The fact that the legislature has created a municipality without bestowing upon it all the powers necessary for its proper government will not authorize this court to declare that the municipality has not a legal existence." (See, also, *Lewis v. Lewelling*, 36 Pac. Rep. [Kan.], 351.)

It is argued that by the constitution the term of office of police judge is fixed at two years, and the office being an elective one, the right is reserved to or conferred on

the people to vote for and choose a person to fill the office at least once every two years.    To this it must be said that the instrument, the fundamental law of the land, which fixed the term, also made a provision that the officer should hold until his successor was qualified; also the fact that vacancies in office will arise is contemplated by it.    From which it follows that the right to elect to an office is inseparably connected with the constitutional and lawful regulations in regard to the term of the office to be filled, and that the fulfillment of the duties of the office as prescribed by such regulations is not and cannot be a violation or infringement of any inherent or vested or constitutional or statutory right of the electors.    It is also urged that to say that an incumbent, under the circumstances developed in this case, may hold the office until the election and qualification of a successor is equivalent to saying that a legislature may fix a term of office of indefinite duration, by repealing the law providing for the election of a successor.    The legislature could not do what has just been stated.    It might attempt it, but it would have no force or effect in regard to an office created by the constitution.    But we have no such conditions in the case at bar.    Here we have not an intentional violation of duty, but a failure to perform in a constitutional manner a portion of the work.    The intention was good, but the manner of its execution bad.    The former would furnish in and of itself a reason for its non-enforcement, the latter would not.    It may be true that there is more or less difficulty in assuming, or in the view that the legislature would have enacted the law of 1897 without the portion herein declared unconstitutional.    Doubtless the legislature would have taken notice of the constitutional difficulties had its attention been directed thereto before or at the time of the passage of the law, and would have avoided them; but we think the law can be separated, and the unconstitutional portion in reference to the term of office of the police judge rejected, and the other portions of the law be operative and be enforced.

It is argued that the act of 1897 is a piece of special legislation, enacted in disregard of the provisions of section 1 of that portion of the constitution entitled "Miscellaneous Corporations," as contained in Compiled Statutes of 1895. The section referred to reads as follows: "No corporation shall be created by special law, nor its charter extended, changed, or amended, except those for, charitable, educational, penal, or reformatory purposes, which are to be and remain under the patronage and control of the state, but the legislature shall provide by general laws for the organization of all corporations hereafter to be created. All general laws passed pursuant to this section may be altered from time to time or repealed." Also of section 15, article 3, of the constitution, which is as follows: "The legislature shall not pass local or special laws * * * incorporating cities, towns, and villages, or changing or amending the charter of any town, city, or village." It may well be doubted, from the general tenor of the article in which it is contained and other reasons, whether the section under the heading "Miscellaneous Corporations" has any application to municipal corporations or to cities, but it is unnecessary to determine the point at this time, and we will give it no further attention.

In an examination into the character of an act of the legislature to ascertain whether it is general or otherwise, the determination of the question must depend on the substance of the act, not its form. That the act contains expressions which might stamp it as general will not give it such character; nor will expressions or terms which might lead to a belief that it is special make it so; the substance alone must give character to the act. The contention here is that the act can refer and apply to but one city in the state, hence is special, unconstitutional, and void. A number of sections and parts of sections of the act are reproduced or quoted from in the printed argument to forcibly present and enforce this point.

This state has followed or joined with others in which similar constitutional provisions were in force, restrictive

in their character, in relation to municipal corporations, their charters, or legislation affecting them, and adopted the system of classification of cities. In the opinion in the case of *State v. Graham*, 16 Neb., 74, wherein the question of the classification of cities was considered, it was announced: "The classification of the cities of the state into classes and sub-classes, and the conferring upon them of corporate powers by acts of the legislature of a general nature, yet the provisions of which are applicable to but one of such classes or sub-classes, is not repugnant to any provision of the constitution." (See, also, *State v. Berka*, 20 Neb., 375; *McClay v. City of Lincoln*, 32 Neb., 412; *State v. Robinson*, 35 Neb., 402; *Hunzinger v. State*, 39 Neb., 653.) If, by a consideration of a law classifying cities on a basis of population, it be determined that another city or other cities may at a future time, without the aid of additional legislation, enter and become a member or members of this particular class, the classification is a general one, and so is the law establishing it. (*State v. Baker*, 44 N. E. Rep. [O.], 516.)

Examined and determined in the light of the foregoing rules, the status of this law as legislation is clearly general, and not special, and the same is true of the classification created by it. The enactment is not legislation special in character, and, as such, repugnant to the provisions of our constitution invoked in this connection in behalf of the relators. The ultimate object of this action is to establish the title of relators to the offices of councilmen of the city of Omaha, and to oust the respondents from the occupancy thereof. The settlement of these matters is, by demurrer to respondents' answer, made to hinge on the question of the validity of the law providing for cities of the metropolitan class passed in 1897. The relators base their claims to the offices on the provisions of a prior law of the same nature, which we may call, for identification, the law of 1887. A demurrer searches the entire record and goes to the first defective pleading.

(*Hower v. Aultman*, 27 Neb., 251; *Oakley v. Valley County*, 40 Neb., 901; *Hawthorne v. State*, 45 Neb., 871.)

In the main the arguments on the proposition that the act of 1897 is void for being special legislation, and for that reason inimical to certain portions of the constitution, are equally cogent and applicable to the act of 1887, which is pleaded in the petition of relators, and under which relators claim title to the offices, and if held of force as to the former, must also have been so determined as to the latter. This being true, the relators cannot be heard in this action to question or litigate the constitutionality of the act of 1897 on the ground of its special character as legislation. (*State v. Stein*, 13 Neb., 529; 19 Am. & Eng. Ency. Law, 677; Maxwell, Pleading & Practice, 724.)

In section 24, article 3, of our constitution, it is provided: "No act shall take effect until three calendar months after the adjournment of the session at which it passed unless in case of emergency (to be expressed in the preamble or body of the act), the legislature shall by a vote of two-thirds of all the members elected to each house otherwise direct. * * *" The act of 1897 was passed with what is known as an emergency clause attached, in which it was stated that "this act shall take effect and be in force from and after its date of approval." It is claimed that the act is objectionable and repugnant to the above mentioned section of the constitution in that different portions of it became operative at different times; that to fulfill the requirements of the constitution it must have become of force as a whole at the one date. We do not think the law is open to this attack. It did take effect and become operative as an entirety on the date prescribed by the legislature; that some officers were by its provisions, as it is stated, continued in office longer than others, or that the terms of some elective officers commenced at a designated date and some appointive ones at dates different from the elective ones, etc., did not change the taking effect of the law as :.

whole or its general operation as to all. (*Hopkins v. Scott,*
38 Neb., 661; *State v. Newborld,* 42 Pac. Rep. [Kan.], 345.)

It is asserted that the act is unconstitutional for that it
is broader than its title, and includes subjects not within
the title. It is stated in section 11, article 3, of the con-
stitution, that "No bill shall contain more than one sub-
ject, and the same shall be clearly expressed in the title."
The title of the act of 1897, omitting the repealing por-
tion, was as follows: "An act incorporating metropolitan
cities and defining, prescribing, and regulating their
duties, powers, and government. * * *" The rule in this
state on this subject is stated in the opinion in the case of
*State v. Bemis,* 45 Neb., 724, as follows: "The provision of
section 11, article 3, of the constitution, viz., 'No bill shall
contain more than one subject, and the same shall be
clearly expressed in the title,' was intended to prevent
surreptitious legislation and not to prohibit comprehen-
sive titles. The test is not whether the title chosen by
the legislature is the most appropriate, but whether it
fairly indicates the scope and purpose of the act." (See,
also, citations on the same line of decisions of this court
in the body of the opinion in the case to which we have
just referred.) "When all the provisions of a statute
fairly relate to the same subject, have a natural connec-
tion with it, are the incidents or means of accomplishing
it, then the subject is single, and, if it is sufficiently
expressed in the title, the statute is valid. (Sedg-
wick, Statutory Construction, 521, note; *Ewing v. Hoblit-
zelle,* 85 Mo., 64.)" Applying the test prescribed in *State
v. Bemis, supra,* there is no question but the title of the act
of 1897 fully expressed the general scope and purpose of
such act. There may be, and no doubt are, detached
and separate portions of the law or portions of sections
of the law in relation to some details of the organiza-
tion and government of the city, which may not have
been outlined or foreshadowed in the title of the law,
but they are distinct and separable, were not induce-
ments to the enactment of the act as a whole, without

which it would not have been passed, and may be rejected without disturbing or interfering with its enforcement generally; and they were not attempts at surreptitious legislation, and do not affect the validity of the act as a whole. (*State v. Lancaster County*, 17 Neb., 85; *State v. Hurds, supra; Hopkins v. Scott, supra.*) Moreover, as to all but one of the sections of the act to which reference is made in the argument for relators on this point, the argument would be as effective against the act of 1887, under which relators claim title, as against the act of 1897; hence, for reasons hereinbefore set forth, the objections to these cannot avail relators in this litigation. There is nothing urged under this head of the argument which so affects the law as to render it invalid as a whole; hence it cannot assist the relators.

In regard to the appointment of fire and police commissioners the law provides for four, not more than two of whom shall be of the same political faith or allegiance; and further, in this connection, in section 168, as follows: "No person shall be appointed a police commissioner who is engaged in the sale of malt, spirituous or vinous liquors, or who is engaged in the business of dealing in tobacco or articles manufactured therefrom, or who is an agent for any fire insurance company or companies, or interested therein, or in the business of soliciting fire insurance, or who shall have been engaged in any of such callings or business within one year previous to the date of appointment. No person shall be qualified to hold the office of police commissioner while he holds any county, city or school district office." It is claimed that this last is class legislation and not permissible under our constitution. A question which might arise in regard to the political qualification was considered in *State v. Seavy,* 22 Neb., 454, *State v. Smith,* 35 Neb., 13, *State v. Bemis, supra,* and determined, and we have not been asked to re-examine it here. In regard to the portion of section 168 which we have quoted, speaking of it as a general

proposition and not in a legal sense, personally I should condemn it as opposed to the true genius and spirit of the republican principles of our government, both state and national; but we need not discuss or decide whether it is vicious and hence unconstitutional, for if so it would not affect the due enforcement of the other portions of the law, or of the parts of it in relation to fire and police commissioners, consequently the determination of such question does not enter into the decision of the ultimate issue herein.

There are some other and further objections made to the law and portions of it designated, which it is claimed are unconstitutional, but these are with reference to parts of the law which, if one or all should be determined invalid, it would not affect the validity and force of the other portions of the law, and, inasmuch as the relators cannot prevail in this litigation unless the whole act is declared unconstitutional, the questions under these objections are but collateral to the main issue and we need and prefer not to discuss or pass on their validity at this time or in this action.

Counsel for respondents opens the argument in his brief with some very forcible statements in regard to the importance of a decision in this case as affecting the credit of the largest city in our state and its business transactions, and quotes from the decision of the supreme court of Ohio in *State v. Baker, supra,* to enforce his views. Courts cannot be and are not unmindful of these things. As we understand it, it is from a consideration of these, combined with other reasons, the general rule has arisen that "all presumptions are in favor of legislative acts, and that no act will be declared invalid unless plainly and irreconcilably so." (*State v. Bemis, supra.*) By this it is not meant that courts will go beyond the rule quoted, for if laws are clearly unconstitutional there is and will be no hesitancy in so declaring, when the question is presented for adjudication.

It follows from the conclusions reached that the de-

murrer to the answer of respondents will be overruled, the writ applied for denied, and the action dismissed.

JUDGMENT ACCORDINGLY.

NORVAL, J., had no part in the final determination of this case.