STATE OF NEBRASKA, EX REL. JOHN C. PENTZER ET AL., RELATORS, V. ROBERT MALONE ET AL., RESPONDENTS; JOHN R. BENNETT ET AL., INTERVENERS.

FILED OCTOBER 19, 1905. No. 14,326.

ORIGINAL application for a writ of mandamus to compel respondents to meet and canvass returns of election. *Writ allowed.*

*Stewart & Munger* and *R. J. Greene,* for relators.

*Tibbets & Anderson,* for respondents.

*E. C. Strode* and *A. G. Greenlee,* for interveners.

PER CURIAM.

Peremptory writ of mandamus allowed as prayed by in-

terveners. Writ not to issue until the further order of the court. Opinion to be filed later.

The following opinion was filed November 11, 1905:

HOLCOMB, C. J.

The interveners pray for a peremptory writ of mandamus to compel the respondents to meet and canvass the votes cast for city alderman at an election held in the city of Lincoln on the first Tuesday of June, 1905, and to declare the result of such canvass. The respondents seek to justify their refusal to canvass such vote, so cast, on the ground that the law providing for such an election is invalid. The election was held under the provisions of an amendatory act of the last legislature, the same being laws 1905, chapter 16, entitled "An act to amend sections 9, 12, 13, 15, 21, 33, 34, 63, 76, 97, 115, subdivisions 1, 8, 14 and 26 of section 129, all of chapter 13, article I, of the Compiled Statutes of Nebraska, 1903, entitled 'An act to incorporate cities of the first class having a population of more than forty thousand and less than one hundred thousand inhabitants; to define, regulate and prescribe their organization, duties, liabilities, powers and government, and to repeal article I of chapter 13a of the Compiled Statutes of 1889, and to repeal the sections so

amended, and to declare an emergency.'" Section 12 of the amendatory act provides: "The general city elections in cities governed by the provisions of this act shall be held on the first Tuesday in April in the year 1905, and on the first Tuesday in May every two years thereafter. Provided, however, that a special city election shall be held on the first Tuesday in June, 1905, for the purpose of electing seven city aldermen as provided by this act. At all general and special city elections held under the provisions of this act the polls shall be opened in each election district at such places as may be designated by the mayor, or fixed by the ordinance, and shall be kept open between the hours of eight o'clock A. M. and seven o'clock P. M. and no longer. Provided further, that all incumbents in office, including the seven councilmen, whose terms of office under operation of existing law expire in the year 1906, shall be privileged to continue in office until the general city election to be held in the year 1907."

1. It is contended by respondents, in justification of their course, that the law is invalid because it operates to extend the term of the police judge for a period of one year contrary to the constitutional provision concerning that office, which fixes the term thereof at two years. It is said that a police judge has been elected in the city of Lincoln in the even numbered years for many years past. It is the law, as settled by several adjudications, that a police judge is a constitutional officer whose term is fixed by that instrument at two years, and that it is not competent for the legislature to extend or abridge the term as thus fixed in the paramount law. It is also held that these provisions of the constitution are self-executing, and that an election to the office of police judge at a general election at the expiration of the term of the incumbent vests in the successful candidate a perfect title to the office, and that such elections shall be had at a general election as specified in the constitution, rather than at the time of holding city elections as may be provided by statute at a time different than that when the general

elections are held. *State v. Stuht,* 52 Neb. 209; *State v. Moores,* 70 Neb. 48, 57; *State v. Nolan,* 71 Neb. 136. Assuming then, without deciding the question, that the provisions of the section under consideration relating to the election of police judge is void because conflicting with the constitution, it by no means follows that the entire amendatory act must fall. In fact it at once becomes apparent that these provisions with reference to the election of a police judge are wholly foreign to the act, and their elimination in no way affects the remainder, nor interferes in the least with the legislative purpose in its passage of the law, or in its execution. The act is yet complete in all its parts, and the invalid part, if it be invalid, is quite separable from the remainder, which is in nowise dependent thereon, nor does it appear that the invalid part is such as to warrant the belief that the legislature would not have acted had it not been incorporated in the act. *State v. Stuht, supra; Trumble v. Trumble,* 37 Neb. 340; *State v. Moore,* 48 Neb. 870.

2. It is also contended that the provisions of section 12 for an election of aldermen on the first Tuesday of June, 1905, is special legislation inimical to the constitution relating to that subject, which inhibits special legislation or local laws regarding the specified subjects therein enumerated, and in all cases where a general law can be made applicable. Const., art. III, sec. 15. The argument is built on the theory that there can be but one such election, and that it applies only to one city, the city of Lincoln, and that the court will take judicial cognizance of the fact that but the one city can ever come under its provisions; that is, that at the special election provided for in June for city aldermen, Lincoln will be the only city participating in such election or that ever will participate therein, and that it therefore applies especially to Lincoln and can never apply to any other city, whatever may be their growth in the future. This may be granted, and yet the conclusion contended for does not follow. The classification of cities according to population, even though but one

city may come under the provisions of the act at the time of its adoption, is permissible under an unbroken line of decisions in this jurisdiction, beginning with *State v. Graham*, 16 Neb. 74. The general classification, then, being in harmony with the fundamental law, can it be successfully contended that the provision for the first election to be held in April or in June contravenes that instrument? The election provided for in April, 1905, would be equally special legislation as that to be held in June. In either case there can be but the one election and it can apply to but the one city. These are simply temporary provisions incorporated for the purpose of putting a law, general in its scope and effect, and admittedly constitutional in its main objects and purposes, into operation and effect. It is for the purpose of effecting a transformation from the old to the new order of things. In this respect a general law, such as contended for, cannot be made applicable. The constitution, it will be observed, recognizes that all laws and all provisions of a law cannot be made general in their operation. The authorities cited by counsel for respondent from Illinois and Minnesota (*Devine v. Board of Commissioners*, 84 Ill. 590, and *Thomas v. City of St. Cloud*, 90 Minn. 477, 97 N. W. 125), are not in point. In each case cited the law was condemned as a whole because applicable for all time to but one city or county. The language of each of the acts held invalid was such that at no future time could any municipality, even though having attained the required population, enjoy the benefits of any of its provisions. In other words, there was no classification of cities generally, but only an act, special in its nature, applying for all time to but the one city or county then in existence of the required population. *State v. Scott*, 70 Neb. 685, recently decided by this court is analogous in principle to the cases last decided. In the case at bar the act applies to all cities now or hereafter having the population therein specified. This, as we have seen, does not infringe on the constitutional inhibition against special legislation. The provisions for the first

elections under the amendatory act to be held in April and June are incidental to the main objects of the law, and do not, because they become obsolete after such elections and therefore applicable only to the city, render the act special legislation within the meaning of the term as used in the fundamental law. In many statutes, we doubt not, will be found provisions of a temporary character which, when they have served their purpose, become of no further use, and which, if consideration be had of them, standing alone and as independent legislation, would be special or local in their nature, scope and effect. Indeed, in the section as it stood before the present amendment, and in the section following, will be found provisions equally objectionable as the one under consideration, and yet we have never heard of them being questioned on the ground of being special legislation inimical to the constitution.

3. It is further argued that the amendatory act in question cannot be upheld because of matters not germane to the original section found in section 13, as amended. It is insisted that the provision therein found which says: "The mayor shall be ex officio president of said council, and shall preside at the meetings thereof, and shall appoint the standing committees of said council, and in the event of a tie vote shall cast the deciding vote. Provided, however, that the council shall have the power to elect a president *pro tempore,* who shall preside over the meeting of a council in the absence of the mayor and who shall exercise the powers of the mayor on his absence from the city" is in violation of the rule now well established in this jurisdiction to the effect that, where the title to a bill is to amend a particular section or sections, no amendatory legislation not germane to the subject matter of the original section proposed to be changed is permissible. *Armstrong v. Mayer,* 60 Neb. 423; *State v. Bowen,* 54 Neb. 211. The original section provided for the election of city officers, including the mayor and a city council, and fixed the terms of their respective offices. The subject embraced in the section, and to which it relates, was in part the formation

of the city council.  The amended section making the
mayor the presiding officer of that body and to that ex-
tent an ex officio member appears clearly, as it appears to
us, germane to the subject of legislation embraced in the
section before amended.  Each relates to the composition
of the body denominated the city council.  It would also
seem that the provision giving the mayor the deciding vote
in the event of a tie is not so foreign to the subject mat-
ter embraced in the section as to render the same in-
vaild.  The mayor is not made a member of that body in
the fullest sense of the word.  His membership is limited
to certain purposes, that is, presiding over the delibera-
tions of the council, and casting the deciding vote in the
event of an evenly divided vote by the members of the body
proper.  It is our duty to uphold the law, unless it is
clearly and beyond reasonable doubt in conflict with the
fundamental law.  If a reasonable doubt exists, it must be
solved in favor of the validity of the statute.  Whenever a
legislative act can be so construed as to avoid a conflict
with the constitution and give it the force of law it will
be so construed, although such construction may not be
the most obvious and natural one.  *State v. Poynter*, 59
Neb. 417; *State v. Smith*, 35 Neb. 13.  Whether, however,
the added powers which are conferred on the mayor in the
section amended are germane to the subject matter of the
original section we need not here determine.  If not so, the
statute would only yield to the extent of the repugnancy,
and no further.  The respondents could not avail them-
selves of such invalid portions of the section.  Conceding
them to be such, it can hardly be said that it is apparent
from the act itself that these provisions, if treated as in-
valid, were such an inducement to the passage of the act
as to avoid the whole.  The legislature will be presumed
to have intended to act within its constitutional limita-
tions, and if it has exceeded its powers the provisions in
excess thereof only will be declared inoperative, except
it be apparent that the rejected part was an inducement to
the adoption of the remainder.

It is also argued that these provisions conferring certain powers on the mayor and providing for the selection of a temporary presiding officer are amendatory of other sections of the act not referred to, or set out in the amended sections, and for that reason the section must go down, and with it the whole amendatory act. If these provisions be not germane to the original section amended, which we do not decide, then they alone would, as we have seen, be held invalid; and if they are germane, then, we are satisfied that they are not amendatory of other sections as contended for in the constitutional sense, wherein it is declared that "no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." *De France v. Harmer,* 66 Neb. 14.

We find nothing in the act, the validity of which is challenged, requiring us to condemn it in its entirety or to declare the law as a whole void, nor that would excuse the respondents from discharging the duty imposed upon them by law to canvass the vote cast at the election for aldermen; and a writ of mandamus is accordingly ordered issued as prayed.

WRIT ALLOWED.